The New York, Chicago and St. Louis Railway Company *v.* Randall.

———◆———

102   453
127    92

No. 12,098.

## THE NEW YORK, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* RANDALL.

LANDLORD AND TENANT.—*Lease.*—*License.*—An instrument conveying an estate in land, subordinate to that of the grantor, to a grantee, upon a valid consideration, and for a definite term, is a lease, and not a license, as a license grants no estate in land.

SAME.—*Effect of Holding Over.*—Where a tenant holds over after his lease has expired, the inference that the parties consent to a continuation of the same terms is so strong that it is adopted as a rule of law.

SAME.—*Collateral Stipulations.*—In such case, where the lease contains collateral stipulations which can be performed after the expiration of the first term, they are made continuous by the implied consent of the parties.

From the Allen Superior Court.

*W. H. Coombs, R. C. Bell* and *S. L. Morris,* for appellant.
*P. A. Randall* and *W. J. Vesey,* for appellee.

NIBLACK, J.—The complaint in this case charged that the appellant, the New York, Chicago and St. Louis Railway

Company, and the appellee Perry A. Randall, on the 15th day of October, 1881, entered into an agreement in writing as follows:

"This agreement, made this 15th day of October, 1881, by and between Perry A. Randall, party of the first part, and the New York, Chicago and St. Louis Railway Company, party of the second part, witnesseth, That the said party of the first part hereby grants and leases to the said party of the second part the right to construct a railroad track, commonly called a 'Y,' from the line of its railroad, west of where it intersects the line of the railroad of the Pittsburgh, Fort Wayne and Chicago Railway Company, over and upon a portion of the N. W. frac. $\frac{1}{4}$ of section six, township 30 north, of range 12 east, in Allen county, owned by said Randall, upon the line now designated and located for said 'Y,' so as to connect the road of the said party of the second part with the Pittsburgh and Chicago Railroad, and to occupy and use for such construction a strip of land 50 feet wide upon each side of said line, and to hold, use, occupy and operate said track upon and over said right of way for the period of one year from the date hereof, in consideration of the payment by said party of the second part, to said party of the first part, of the sum of $400, the receipt of which is hereby acknowledged. It is also further agreed that if said party of the second part at, or at any time before, the expiration of this lease, shall determine to permanently use said track and right of way, and so notify said Randall, it shall have the right to proceed to appropriate the same and have the value thereof fixed as provided by law in case of condemnation or appropriation of lands for the use of railroad companies, without prejudice from or by reason of this agreement, or the use or occupancy hereunder, the same as if such proceedings were begun at this time, and said sum of $400, so paid as aforesaid, shall in that event be applied and credited and allowed as a payment on the sum so fixed as the price of said premises in such proceedings to appropriate as aforesaid; and in any such

proceedings to appropriate and fix thereunder the value of said premises, no account shall be taken of the value of any work done or property placed thereon by the said party of the second part in constructing and using its said track, and should it not desire to permanently use nor appropriate said premises, it shall, at the expiration of this lease, have the right to remove any ties, rails or superstructure placed by it on said premises."

The complaint further charged that, on the said 15th day of October, 1881, the railway company entered into the possession and occupation of the strip of ground therein described, pursuant to said agreement; that after the 15th day of October, 1882, the railway company elected to continue its tenancy of said strip of ground for another year from that day, upon the same terms and at the same rent as provided by the agreement for the preceding year, and continued and remained in the possession and occupation of the same; that there was due from said railway company to the said Randall the sum of $400 for rent for said strip of ground for the year commencing on said 15th day of October, 1882, which remained unpaid.

A demurrer to the complaint being first overruled, the railway company answered in six paragraphs. The first paragraph was in denial. The second averred that at the time the agreement referred to was entered into, the lands described by it were uninclosed timbered lands and of very little rental value; that the sum of $400 mentioned in the agreement was paid to the plaintiff as a compensation in gross for the injury which would result to his lands, including the timber thereon, by the construction of the proposed railroad track and the privileges connected therewith, without the institution of proceedings to permanently appropriate said lands, and not as the rental value thereof; that having, at the end of the first year, no further use for the connecting railroad track provided for by the agreement, it ceased to use the same, except at short times and upon a few occasions,

when empty cars were placed thereon without injury to the plaintiff; that within three months after the expiration of said first year, it, with the consent of the plaintiff, removed its railroad from the plaintiff's lands; that it did not either expressly or impliedly elect to continue its agreement with the plaintiff for another year, nor did it ever, either expressly or impliedly, promise to pay more than the reasonable rental value of the strip of ground used by it in the manner and form above stated; that such reasonable value did not exceed the sum of $50, for which, with costs, it offered to confess judgment.

The fourth paragraph of answer was a plea of payment, and the third, fifth and sixth paragraphs were, in their general purport and meaning, substantially similar to the second. Demurrers were sustained to the second, third, fifth and sixth paragraphs. The first paragraph was thereupon withdrawn, and the cause was then submitted to the court for trial upon an issue formed only upon the answer of payment, the result being a finding and judgment for the plaintiff for $400.

Questions were reserved only upon the pleadings, and whether the contract entered into between the parties was a lease, or only an agreement in the nature of a special license not extending beyond the end of the year, is made the leading, and, indeed, the controlling question in the cause.

Sutherland on Damages, vol. 3, 108, says: "Where a tenant holds over after his lease has expired, the inference that the parties consent to a continuance of the same terms is so strong that it is adopted as a rule of law. But the rule does not apply, and such an agreement is not implied where the lease contains many collateral stipulations which could not be performed in a subsequent term; nor where the intention to continue the same terms is otherwise rebutted by the terms of the lease, or the conduct of the parties."

Taylor on Landlord and Tenant, at section 525, states the same rule as follows: "Where the landlord suffers the tenant to remain in possession after the expiration of the original

## MAY TERM, 1885. 457

The New York, Chicago and St. Louis Railway Company v. Randall.

tenancy, the law presumes the holding to be upon the terms of the original demise, subject to the same rent, and to all the covenants of the original lease, so far at least as they are applicable to the new condition of things." See, also, Woods Landlord and Tenant, section 13, p. 18; *Schuyler* v. *Smith*, 51 N. Y. 309.

If, therefore, the agreement, counted on in this case, was a lease, the holding over by the railway company, without any new contract, worked as to it a continuance of the agreement for another year.

It is true, as contended, that calling a written instrument a lease does not necessarily impress that character upon it. But it may be said in general terms that where the conveyance of an estate in land, subordinate to that of the grantor, to a grantee, upon a valid consideration, and for a definite term, is made, the instrument making the conveyance is a lease. Less than this might, under some circumstances, constitute a lease; more is evidently not required. Bouvier Law Dictionary, title "Lease;" *Munson* v. *Wray*, 7 Blackf. 403. Tested by this definition the agreement before us was a lease. It was certainly more than a license, since a license grants no estate in the land. 1 Washb. Real Prop. 629; *Knight* v. *Indiana C. and I. Co.*, 47 Ind. 105 (17 Am. R. 692). Its collateral stipulations were such as might have been performed after the expiration of the first year, and were consequently made continuous by the implied consent of the parties. *Kerr* v. *Day*, 14 Pa. St. 112. We, therefore, regard the complaint as having been sufficient upon demurrer.

The paragraphs of answer to which demurrers were sustained admitted in effect the holding over by the railway company without any new contract either changing or modifying the original agreement. They only sought to have a construction placed upon the agreement different from that which we have given it, and different from what appears to us to be the plain import of the language used by it in declaring the purposes for which the parties entered into it.

*Montgomery* v. *Board, etc.,* 76 Ind. 362 (40 Am. R. 250); *Terstegge* v. *First G. M. B. Society,* 92 Ind. 82 (47 Am. R. 135); *Bollenbacker* v. *Fritts,* 98 Ind. 50. For these reasons the demurrers to those paragraphs of answer were properly ,sustained.

The judgment is affirmed, with costs.

Filed April 28, 1885. Petition for a rehearing overruled Sept. 17, 1885.