WALSH *v.* SOLLER ET AL.

[No. 25,808.   Filed April 16, 1934.   Rehearing denied July 6, 1934.]

*Luther Benson* and *Clyde McGary,* for appellant.

*T. Morton McDonald,* for appellees.

MYERS, J.—This was an action by appellees against appellant to recover possession of certain real estate, and to recover damages for its unlawful detention. Trial by the court, special finding of facts and conclusions of law thereon, followed by a judgment in favor of appellees for possession and $520 damages. Errors are here assigned on each conclusion of law.

Appellees have requested permission to orally argue this case, but as we are at present advised, the judgment must be affirmed and nothing will be gained by granting the request.

The facts found in substance, show that on January 1, 1914, appellees were the owners of certain real estate, 16 feet by 100 feet, in Princeton, Indiana, and on that date in writing leased the same to appellant until January 1, 1919, at a certain monthly rental payable in advance. Among other things, the lease provided that "at the expiration of this lease, or on failure to pay the rent each month when the same becomes due, or on failure to comply with any of the conditions of this lease, the same shall terminate at once without further notice, and the said lessors may enter upon and take possession of said premises and expel the occupant thereof, without in any wise being a trespasser." Appellant entered into possession of the leased premises, continued to occupy the same for the full term of five years, and, with the consent of appellees, continuously thereafter until November 30, 1927, when appellees served on him a notice to quit and to surrender possession of the leased premises January 1, 1928; that appellant held possession

of the premises after the expiration of the original term, subject to the conditions of the lease, except on January 1, 1918, the rent was increased from $30 to $35 per month, and on January 1, 1926, to $50 per month. The October rent was paid and accepted by appellees on the 26th inst. in full payment to November 1, 1927. Appellant paid no rent thereafter. The notice to quit was not for failure to pay rent. Prior to the giving of this notice, appellees had entered into a written lease with J. C. Penny Company whereby the latter was to have possession of the premises in question on January 2, 1928. Appellant failed to vacate the premises on January 1st, and this action was commenced in the Gibson circuit court on January 14, 1928. On April 27, 1928, the clerk of the Gibson circuit court, upon an affidavit filed by appellees, issued an order to the sheriff of Gibson County directing him to take possession of the property described in the complaint. The sheriff served a copy of the order on appellant, who, within five days thereafter, failed to execute a written undertaking with surety payable to appellees. Thereupon, appellees furnished a written undertaking payable to appellant with surety approved by the sheriff, whereupon (May 6th) appellant vacated the premises. Trial May 31st and judgment June 5, 1928.

Appellees have submitted a motion to dismiss this appeal for the reason that on May 6, 1928, appellant voluntarily surrendered possession of the real estate in question, and the judgment on the amount of damages is not questioned. The facts found do not justify the statement that appellant quit the premises voluntarily. He vacated the premises after appellees had entered into an undertaking entitling them to possession. Acts 1927, p. 741, §1129.3, Burns Supp. 1929, §3-1306, Burns 1933, §946, Baldwin's 1934. Under these circumstances appellant merely submitted

to the mandate of the law, and under his theory of the case he was injured and not benefited, and consequently the cases of *Ogborn* v. *City of Newcastle* (1912), 178 Ind. 161, 98 N. E. 869; *State ex rel.* v. *Indianapolis Gas Company* (1904), 163 Ind. 48, 71 N. E. 139, and other like cases cited by appellees do not apply, for, as said by Elliott in his work on Appellate Procedure, §152: "It is obvious that there is an essential difference between one who pays a judgment against him and one who accepts payment of a sum awarded him by a judgment." Had appellant, in addition to his quitting the premises, paid the money judgment adjudged against him, still he would not be estopped from prosecuting this appeal. · *Belton* v. *Smith* (1873), 45 Ind. 291; *Cleveland, etc., R. Co.* v. *Nowlin* (1904), 163 Ind. 497, 72 N. E. 257; *Princeton Coal Co.* v. *Gilmore* (1908), 170 Ind. 366, 83 N. E. 500. The questions presented by this appeal are not moot and the motion to dismiss is overruled.

The court stated six conclusions of law. The second, third, and fourth, in substance, were that the notice served on appellant November 30th terminated his lease on January 1, 1928, and by virtue of that notice his possession of the premises was unlawful after that date; that his possession of the premises "became fully operative as a general tenancy from month to month on the 1st day of December, 1927." In our opinion, the facts found fail to sustain these three conclusions. They were, however, non-essential, uninfluential, and therefore harmless in the final disposition of this cause.

Conclusions Nos. 1 and 5 are as follows:

No. 1. "The defendant for the year 1927 had a vested right in the possession of the premises described in the lease set out in the special finding of facts subject, however, to all the terms and conditions of the lease including modification thereof

in respect to the amount of rental excepting the provision in said lease as to date of expiration."

No. 5. "The plaintiffs are entitled to a judgment for the possession of the premises described in the special finding of facts, same being the premises described in the second paragraph of plaintiff's complaint."

These conclusions determine the right of appellant to possession, and No. 6 has to do with the unquestioned amount of damages which should be adjudged in favor of appellees.

Appellant, as we understand him, takes the position, first, that under the facts found he was a tenant of appellees from year to year and entitled to three months' notice prior to January 1, 1928, in order to terminate his tenancy on that date, and, second, that the fourth conclusion of law was erroneous for the reason it was based on ch. 87, Acts 1927, p. 222; §9540, Burns Supp. 1929, §3-1615, Burns 1933, §10170 Baldwin's 1934, which deprived him of a vested right of a tenancy from year to year to one from month to month in violation of Art. 1, §10, Constitution of United States, and Art. 1, §24, Constitution of Indiana.

While it is true the General Assembly of this state is inhibited by the sections of the constitutions cited from passing laws impairing the obligation of contracts, yet it is equally well settled that a party who seeks to have a statute declared void on the ground that it impairs the obligation of a contract must affirmatively show that such statute impairs his contractual rights to his prejudice. *Currier* v. *Elliott* (1895), 141 Ind. 394, 407, 39 N. E. 554; *State ex rel.* v. *Morris, Mayor* (1927), 199 Ind. 78, 87, 155 N. E. 198; *Tomlinson* v. *Bainaka* (1904), 163 Ind. 112, 119, 70 N. E. 155; *State* v. *Gerhardt* (1896), 145 Ind. 439, 450, 44 N. E. 469; *Sarlls* v. *State ex rel.* (1929), 201 Ind. 88, 166 N. E. 270.

The special findings show that the holding over by appellant was pursuant to a written lease which provides that at the expiration thereof "the same 4. shall terminate at once without further notice."

Keeping that stipulation of the lease in mind, and for the purposes of this case conceding that appellant's possession of the premises in question during the year 1927 was, in effect, a tenancy from year to year, it must necessarily follow that by the express terms of the lease his tenancy terminated January 1, 1928. Since the parties fixed the time certain when the lease should terminate, no notice to quit was required. Section 9545, Burns 1926, §3-1620, Burns 1933, §10177, Baldwin's 1934; *Whetstone* v. *Davis* (1870), 34 Ind. 510; *McClure* v. *McClure* (1881), 74 Ind. 108; *Lautman* v. *Miller* (1902), 158 Ind. 382, 63 N. E. 761; *Millington* v. *O'Dell* (1905), 35 Ind. App. 225, 73 N. E. 949; *Grimes* v. *Muzzillo* (1925), 83 Ind. App. 368, 148 N. E. 425.

Hence, appellant's insistence that he was entitled to three months' notice is not well taken. Furthermore, the thirty days' notice to appellant in this case amounted to a mere reminder of the termination of the lease, and that appellees would take possession of the premises at the end of the year. It was not given as a notice to pay rent within a specified time, nor was it effective to charge appellant with any default. He had the benefit of a full year's tenancy and everything he could claim under his contract. Consequently, no contractual right of his was impaired by the statute which he would have us declare unconstitutionel.

For the reasons stated, we find no reversible error in the court's conclusions of law on the facts found.

Judgment affirmed.

### ON A PETITION FOR A REHEARING.

MYERS, J.—On petition for a rehearing appellant seems to be under the impression that we misinterpreted

the finding of facts upon which he relies for his insistence that he thereby became a tenant from year to year and entitled to three months' notice to quit. The special finding so relied on by appellant follows:

> "that said defendant entered into possession of said premises and held and occupied the same pursuant to said written lease above set forth; that at the expiration of said term, on the first day of January, 1919, said defendant held over and continued to occupy said premises with the consent of the plaintiffs without any further agreement or understanding as to the duration of his term, and during his said holding and occupancy said defendant paid, and said plaintiffs accepted, rent therefor as hereinafter set forth; that during said holding and occupancy of said premises by said defendant as aforesaid there was no change in the terms and conditions of his said occupancy and tenancy except that, on the 1st day of January, 1918, the amount of rental was increased to $35.00 per month, and on the 1st day of January, 1926, the amount of said rental was increased to $50.00 per month; which amounts were paid by said defendant."

Our former reference to this finding we thought sufficient to give the reader of the opinion the question for decision. As we understand the finding above quoted, that part of it beginning with the word "that" and ending with the words "as hereinafter set forth" has reference to the original term of the lease—five years. The remainder of the finding covers not only the period included in the express contract, but the time appellant held over as well, during which *"there was no change in the terms and conditions of his said occupancy and tenancy except"* (our italics) changes in the monthly rental.

We are still of the opinion that the foregoing italicized clause in the finding must be construed to mean that appellant's holding over was governed by the original contract containing the stipulations for the termination of the lease *without further notice,* notwithstanding the

holding over may have been with the consent of the landlord.

In *Harry* v. *Harry* (1890), 127 Ind. 91, 26 N. E. 562, it is said: "It is well settled that where the duration of the tenancy is definitely fixed by the terms of the agreement under which the tenant goes into possession of the premises which he is to occupy, and he continues to occupy after the close of the term without a new contract, the rights of the parties are controlled by the terms and conditions of the contract." Citing cases. It has also been held, "The mere fact that a tenant holds over after the expiration of his lease does not create a tenancy from year to year." *Habich* v. *University Park Bldg.* (1912), 177 Ind. 193, 97 N. E. 539.

The original tenancy, by the terms of the lease in the instant case, terminated January 1, 1919. The findings show that appellant continued in possession of the premises covered by the lease with the consent of appellee without any change in the terms and conditions of his occupancy. In other words, that by consent of the parties the lease was extended not indefinitely or without reference thereto, but in accordance therewith for another year terminating the following January 1st "without further notice," and each holding over was subject to the same terms as to occupancy and termination. Such attendant conditions create a new tenancy, not general or from year to year, but certain in point of time—one year—so fixed by the agreed notice to quit. *Whetstone* v. *Davis* (1870), 34 Ind. 510.

We therefore conclude that appellant, under the stipulations in his lease, was not entitled to three months' notice to quit prior to January 1, 1928.

Petition for a rehearing denied.