**EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Limited, Plaintiff-Appellant,**

v.

**ENOS COAL CORPORATION, Defendant-Appellee.**

**No. 18983.**

United States Court of Appeals, Seventh Circuit.

March 15, 1972.

Gray & Waddle, Petersburg, Ind., of counsel.

Before HASTINGS, Senior Circuit Judge, and STEVENS, and SPRECHER, Circuit Judges.*

HASTINGS, Senior Circuit Judge.

Employers' Liability Assurance Corporation, Limited brought this diversity action against its insured, Enos Coal Corporation, pursuant to Title 28 U.S.C.A. § 2201, for a declaratory judgment in a controversy concerning the rights and obligations of the parties under a coal mine liability policy issued by Employers to Enos. Employers sought a declaration that the insurance policy did not extend coverage to an accident which occurred June 7, 1968, involving a truck owned and operated by Enos and an automobile operated by a third party.

Under date of March 14, 1966, Employers issued the subject premises policy of liability insurance to Enos which contained the following disputed exclusion provision:

"This policy does not apply:

"(a) except with respect to operations peformed by independent contractors, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles, *if the accident occurs away from premises owned by, rented to or controlled by the named insured or the ways immediately adjoining such premises, \* \* \*."* (Emphasis added.)

This case was submitted to the trial court for decision on an agreed stipulation of facts, the brief testimony of two witnesses and the submission of post trial briefs, without oral argument. The parties further agreed that the issues for determination were whether or

Robert H. Hahn, Evansville, Ind., for plaintiff-appellant; Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., of counsel.

Carl M. Gray, Marvin D. Stratton, Petersburg, Ind., for defendant-appellee;

---

* The original panel which heard oral argument in this case on November 2, 1971, was Major and Hastings, Senior Circuit Judges, and Kerner, Circuit Judge. Neither Judge Kerner nor Senior Circuit Judge Major, whose death occurred on January 4, 1972, participated in the adoption of this opinion.

Thereafter, a panel of Hastings, Senior Circuit Judge, Stevens and Sprecher, Circuit Judges, was designated and assigned to act in this matter. Subsequently, Judges Stevens and Sprecher listened to a replay of the tape recording of the oral argument had on November 2, 1971, and examined and studied the briefs and record in this appeal.

not the accident of June 7, 1968 occurred on premises (1) owned by, (2) rented to or (3) controlled by Enos, or (4) on ways immediately adjoining the premises of Enos. Since it was stipulated and agreed at trial that Enos did not own the premises on which the accident occurred, that issue need not be considered further.

The trial court entered and filed ten findings of facts and stated thereon four conclusions of law, all favorable to Enos on the foregoing issues (2), (3) and (4). Judgment was entered that Employers was liable to Enos under the subject policy of insurance for the payment of all liability and costs assessed against Enos by reason of the automobile collision of June 7, 1968. Employers appealed. We affirm.

The material facts in this case are not in dispute. The trial court adopted and used an agreed map, marked "Exhibit D", which correctly shows the location of the physical facts relevant to the issues and referred to by the trial court in its findings. Accordingly, we attach a copy of this map as an exhibit to this opinion for purposes of identification. We shall refer to it as "the map."

The 750′ roadway in dispute extends from circle "A" to circle "B" and there connects with and continues on from "B" as a private haulage road owned by Enos on its own strip mine coal property. The 750′ roadway will be referred to as the "detour" roadway. Circle "A" marks the point where the accident occurred at the intersection of Indiana State Highway No. 61 and the detour roadway. That part of a county public road extending from circle "C" to "B" is the portion thereof legally closed to the public in 1937. Shown also are the railroad right-of-way, the location of the Deen and Hamm properties, as well as the Enos property.

In December, 1930, Patoka Coal Company (Patoka) sold and conveyed its lines of railroad and equipment pertaining thereto, now located on the railroad right-of-way in question, to Algers, Winslow and Western Railway Company (the railroad). Patoka subsequently was merged with and succeeded by Ayrshire Collieries Corporation. Aryshire was succeeded by defendant Enos Coal Corporation. Enos is the present owner of the coal mine property and other rights as the successor in interest of its predecessors Patoka and Ayrshire.

In 1937, Patoka, with the consent of the railroad, extended multiple siding tracks on the railroad right-of-way across the county public road in the area of circle "B".

For reasons of public safety, Patoka in 1937 secured an order from the Pike County Commissioners abandoning and temporarily closing the county public road from circle "C" to "B", and further authorizing the temporary construction of the detour roadway. The authorization for the temporary closing and detour construction was for a period not to exceed three years. The closing of said highway and the construction and maintenance of the detour was to be at the sole expense of Patoka. The railroad leased to Patoka an easement on its right-of-way for the construction of the detour roadway. Pursuant thereto the county public road was closed from circle "C" to "B" and has continuously remained closed to the time of this litigation. Patoka constructed the detour roadway, at its own expense, which detour has remained open and in use at all times in issue.

The lease by the railroad to Patoka of the detour roadway in question was for a period of ten years at an annual rental of $1.00, the lessee to pay any taxes or other public assessments against the same, with the right to renew for an additional five years. It was further provided that in case of default in such payments, the amount due should become a debt subject to repayment upon demand by the railroad. The lease was never formally extended beyond its original term and only the rental for the first year was paid. The lessee has never paid any taxes or public assessments against the right-of-way. There is no showing that the railroad ever demanded

any further rental payments or the payment of any taxes or assessments. The lessee has continued to use the right-of-way with the knowledge and implied consent of the railroad. The lessee has provided all maintenance of the detour roadway with the exception of infrequent minor repairs by the county. The detour roadway has been the only means of ingress and egress to the Hamm and Enos properties. Since 1937 the detour roadway has been available to the use of the public, but in fact the only use of the same by anyone was as a means of ingress and egress for members of the Hamm family and those engaged in the business of Enos and its predecessors in interest, and members of the public seeking to contact any of them. The only use of the Enos mining property, to which the detour roadway leads, was for the purpose of mining that part of its property not already stripped. Except for a period of about four years from the time Ayrshire ceased mining coal until Enos began mining, the lessee of the detour roadway exercised the same rights in the roadway in question as was originally granted in the 1937 lease. Further, the lessor and lessee during this period have continued to transact the business and to require the use of the facilities and the detour roadway, which caused the establishment of the detour in the first place. There has never been any challenge to the claim of right exercised by the lessee except that presently asserted by Employers. Finally, it is agreed that there has never been any attempt by Enos, the railroad or any governmental unit or agency to regulate, direct or restrict the use of the detour roadway.

The "automobile" owned by Enos involved in the accident was operated at the time by its employee Minuard Russell. It was an unlicensed water sprinkler tank truck, generally used for the purpose of sprinkling roads for Enos in connection with its mining operations. In particular, it was used on frequent occasions to lay the dust on the detour roadway for the benefit of the Hamm family. This motor vehicle was designed for use on and off public roads and was subject to registration with the State of Indiana. It is undisputed that this sprinkler tank truck was an "automobile" within the definition contained in and covered by the subject insurance policy.

The other automobile involved in the accident with the Enos sprinkler truck was a Plymouth station wagon operated by Floyd E. Norrick, who was killed. Norrick's death resulted in litigation against Enos. Under a reservation of rights, Enos was represented both by Employers and its own private counsel. Again, under a reservation of rights, Employers and Enos contributed equally to a compromise settlement of the Norrick litigation. The instant declaratory judgment action followed the foregoing settlement.

In order for Employers to prevail in this action it must establish all of the three remaining essential elements of the subject policy exclusion clause hereinabove set out. Failure to establish any one of them will defeat the declaration requested.

### I.

■ The instant premises liability insurance policy does not define the term "premises." The spaces in the policy where such definition and description might have been spelled out were left completely blank. Employers, being the drafter of the insurance contract, could have specifically excluded the coverage contended for by Enos; "but, having failed to do so, and having left the pertinent term of the contract undefined, the court should adopt the meaning of that term most favorable to the insured." Pre-Cast Concrete Products, Inc. v. Home Insurance Co., 7 Cir., 417 F.2d 1323, at 1330 (1969); Farber v. Great American Insurance Company, 7 Cir., 406 F.2d 1228, 1232 (1969); Wigginton v. Order of United Commercial Travelers, 7 Cir., 126 F.2d 659, 666–667 (1942), cert. denied, 317 U.S. 636, 63 S. Ct. 28, 87 L.Ed. 513; Norways Sanatori-

um v. Hartford etc. Co., 112 Ind.App. 241, 248, 41 N.E.2d 823 (1942); Chicago Fire, etc., Ins. Co. v. Newman, 89 Ind.App. 22, 25, 165 N.E. 554 (1929). *See also* Gulf Insurance Company v. Tilley, D.C.N.D. Ind., 280 F.Supp. 60, 64 (1967), citing Indiana cases at 64, aff'd 393 F.2d 119 (1968).

The meaning of the term "premises" has been given a wide variety of treatment depending largely upon the context in which it is used, *i. e.,* in pleadings, contracts, estates, conveyancing, legislation and on ad infinitum. Spencer Stone Co. v. Sedwick, 58 Ind.App. 64, 77–78, 105 N.E. 525, 529 (1914), speaks of "lands and tenements"; "lands and everything appurtenant thereto"; "a public street and alley adjacent to a brewery"; "[an] easement as well as to the land conveyed"; and "a right of way incident to land or an estate."

An interesting consideration of an exclusion clause in a liability insurance policy is to be found in St. Paul Fire and Marine Insurance Company v. Coleman, D.C.W.D.Ark., 204 F.Supp. 713, 720–722 (1962), aff'd 316 F.2d 77 (1963), cert. denied, 375 U.S. 903, 84 S. Ct. 191, 11 L.Ed.2d 143. The policy excluded coverage of watercraft "if the accident occurs away from premises owned by, rented to or controlled by the named insured." The accident occurred to a boat in water 73 feet away from the insured dock facility. The policy did not define the word "premises". The court held 204 F.Supp. at 721, that the term included "water adjacent to structures designed to service boats using the lake, particularly when the water is a necessary means of ingress and egress to the building or structure * * * [and] that the premises should be construed to mean the entire business operation of the insureds." *Cf.* Jones v. Globe Indemnity Co., D.C.E.D.Cal., 305 F.Supp. 242, 245–246 (1969).

■ We conclude from the foregoing that, in the context of the existing factual situation, the term "premises" in the instant exclusion clause may be held to include the detour roadway, provided it is shown that such detour was "rented to or controlled by" Enos.

## II.

■ Employers contends that the trial court erred in concluding that the detour roadway was premises leased by Enos. It argues that the lease in 1937 between the railroad and Patoka was not extended beyond its original ten year term; that none of the covenants or conditions of the lease were fulfilled by Patoka after the first year; and that, under Indiana law, the lease could not be said to have been rented by Enos or to have been in effect on June 7, 1968.

Enos, of course, asserts a contrary contention. It argues that "It is a settled principle of law in Indiana that where a tenant, after the expiration of a lease for a definite period, holds over, either with express consent of the landlord or with the landlord's implied consent and without any new contract, he is a tenant from year to year, whose rights are determined by the terms of the original lease, except as to time."

In the New York, Chicago and St. Louis Railway Company v. Randall, 102 Ind. 453, at 456, 26 N.E. 122, at 123 (1885), the Supreme Court of Indiana adopted as a rule of law: "Where a tenant holds over after his lease has expired, the inference that the parties consent to a continuance of the same terms is so strong that it is adopted as a rule of law." *See* Remm v. Landon, 43 Ind. App. 91, 96, 86 N.E. 973 (1909).

As was stated in Ridgeway v. Hannum, 29 Ind.App. 124, at 126–127, 64 N. E. 44 (1902): "'It is well settled,' said the court in Harry v. Harry, 127 Ind. 91, 26 N.E. 562, 'that where the duration of the tenancy is definitely fixed by the terms of the agreement under which the tenant goes into possession of the premises which he is to occupy, and he continues to occupy after the close of the term without a new contract, the rights of the parties are controlled by the terms and conditions of the contract

under which the entry was made. The tenant is still a tenant by contract.' " This principle was approved by the Indiana Supreme Court, on petition for rehearing, in Walsh v. Soller, 207 Ind. 82, 89, 190 N.E. 61 (1934). *See* Kleespies v. McKenzie, 12 Ind.App. 404, 406–407, 40 N.E. 648 (1895).

We do not deem it important that Enos has not paid rent after the holding over. The payment and acceptance of rent has been used by the courts to imply consent, rather than as a prerequisite. *See* Marcus v. Calumet Breweries, Inc., 117 Ind.App. 603, 73 N.E.2d 351 (1947), citing Walsh v. Soller, *supra*. Further, we think it is not without significance that in practically all the cases cited by both parties it was one of the parties to the lease agreement that was attempting to terminate or hold without present effect the landlord-tenant relationship. In the case at bar, it is Employers, a third party, who is seeking this relief as it may apply to still another agreement, a liability insurance policy.

In sum, in light of the undisputed factual situation and the foregoing Indiana authorities, we have concluded that as a matter of law the detour roadway was "rented to" Enos in the context of the provisions of the disputed exclusion clause of the insurance policy under consideration.

### III.

The parties make much of the question of whether the detour roadway is a public highway. Our review of the appropriate Indiana statute, Burns' § 36–1807, Vol. 7, Part 2, IC 1971, 8–20–1–15,[1] the relevant Indiana authorities and the agreed stipulation of facts, leads us to the conclusion that the detour roadway is a public highway. Nichols v. The State, 89 Ind. 298, 299 (1883), holds that the public character of the way is not to be determined by its length or place of termination, *i. e.*, it does not have to "be of great length and may terminate on private property." Cozy Home Realty Co. v. Ralston, Rec., 214 Ind. 149, 151–152, 14 N.E.2d 917, 918 (1938), holds that "Use is the sole test, though frequency of use or the number of users is unimportant. It is enough if it is free and common to all who have occasion to use it as a public highway." It adds that such continuous use will be presumed to be under a claim of right. *See, inter alia,* Small v. Binford, 41 Ind. App. 440, 445–446, 83 N.E. 507 (1908); Stewart v. Swartz, 57 Ind.App. 249, 252, 106 N.E. 719 (1914). Other pertinent authorities could be cited.

Although the detour roadway may be a public highway, its public character is relevant only to the question of whether it was "controlled" by Enos. We leave open the question of whether a public highway may be controlled by a private person for purposes other than protection of the public, within the meaning of an insurance liability policy. Likewise, we need not pass upon the added question of whether the detour roadway was a way immediately adjoining the premises of the insured. It is enough to hold, as we do, that the accident did not occur away from premises rented by Enos.

We hold that the trial court did not err in concluding that Employers failed to prove the accident did not happen on premises rented by Enos; that the liability of Employers to Enos is not excluded by the subject exclusion clause in the liability insurance policy in question; and that Employers is liable to Enos for all losses incurred by Enos arising from such accident.

Accordingly, the judgment of liability appealed from is affirmed.

Affirmed.

---

1. Shown as amended in the 1971 cumulative pocket supplement: " * * * (a) All county highways heretofore laid out according to law, or used as such for twenty (20) years or more, shall continue as originally located and as of their original width, respectively, until changed according to law."