MOONEY-MUELLER-WARD, INC. *v.* ROBERT A. WOODS ET AL.

[No. 2-276A45. Filed January 17, 1978.]

*Richard L. Swartz, Reading and Swartz,* of Wabash, for appellant.

*Richard P. Fisher, McCallen, Mattern & Fisher,* of Wabash, for appellees Dannacher, Miami Enterprises, Inc., Gackenheimer and Gackenheimer Pharmacy. *Albert H. Cole, Cole, Haig & Roberts,* of Peru, for appellee Woods.

## STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

This is an action to recover an amount due on an open account. Plaintiff-appellant Mooney-Mueller-Ward, Inc. (Mooney) appeals from a judgment in favor of defendants-appellees Robert and Dorthea Woods, William and Emily Dannacher, Miami Enterprises, Inc., Paul and Robert Gackenheimer, and Gackenheimer Pharmacy, Inc. (Woods, et al.).

## FACTS

In October, 1968 Robert and Dorthea Woods leased a drugstore in Wabash, Indiana called the Medical Arts Pharmacy from William and Emily Dannacher and Miami Enterprises, Inc. The lease provided that the Woods would, through cash payments only and not through credit purchases, maintain the inventory of the drugstore at the level that it was when the lease was initially signed. The Dannachers and Miami retained the ownership of that inventory, but allowed the Woods to use that inventory in the normal course of business. During the four years which the Woods leased the Medical Arts Pharmacy they made several credit purchases of drugs and supplies from Mooney. Such purchases were made in order to replenish the original inventory which was owned by the Dannachers and Miami.

The lease expired in October, 1971, but the Woods remained in possession of the premises and operated the drugstore without signing a new lease. They were evicted in October, 1972 while holding over. During that year without a written lease Dorthea Woods did not participate in the operation of the drugstore.

After the Dannachers evicted the Woods, the Gackenheimers leased the drugstore and were permitted to use the inventory in the normal course of business. The Gackenheimers agreed to purchase the inventory for a stated price after all claims to that inventory had been settled.

Robert Woods had been discharged in bankruptcy prior to the date of trial. Therefore, a judgment could not be rendered against him. The trial court found that, although her signature was on the lease signed in 1968, Dorthea Woods did not actively participate in the operation of the store except for providing emergency service as a clerk when it was necessary. The pharmacy permit

named Robert Woods as the owner, and Robert Woods, alone, made all purchases for the pharmacy.

The trial court made the following findings of fact:

"1. Did the plaintiff prove the existence of a valid and accurate account between the plaintiff and the Medical Arts Pharmacy?

Answer: Yes

2. Did the evidence show that the defendant, Robert A. Woods, was the person primarily responsible for paying this account and that he had a legal obligation to do so at the time this suit was filed?

Answer: Yes

3. Did the Court find that judgment could not be entered against him because he had discharged this debt in bankruptcy prior to the date of trial?

Answer: Yes

4. Did the Court find that the arrangement between the defendants, William Dannacher and Paul Gackenheimer, was not a 'transfer' and therefore did not violate the 'Bulk Transfers Act'?

Answer: Yes

5. Did the evidence show that said arrangement would have been a violation of the 'Bulk Transfers Act' if it had been a 'transfer'?

Answer: Yes"

## ISSUES

The issues presented to this court for review are as follows:

1. Whether the trial court should have concluded from the evidence that because Dorthea Woods was a co-lessee of the Medical Arts Pharmacy she was a partner of Robert Woods and, therefore, legally responsible for the debts incurred in the operation of that business.

2. Whether the trial court should have concluded that Robert Woods was an agent of the Dannachers, and, as a matter of law, the Dannachers were required to pay the debt incurred by Woods.

3. Whether the trial court should have found that, as a matter of law, the agreement between the Dannachers and the Gackenheimers was a "transfer" and therefore a violation of the Bulk Transfers Act.

## DISCUSSION AND DECISION

*ISSUE ONE*

Mooney has waived this first issue by its failure to provide this court with any citation of authority in its brief which supports its argument that Dorthea Woods' signature on the lease made her a co-owner of the business and, thus, responsible for any debts incurred by her husband, Robert, in the operation of that business. See Indiana Rules of Procedure, Appellate Rule 8.3(A)(7) and *Van Wells v. Stanray Corporation* (1976), 168 Ind. App. 35, 341 N.E.2d 198.

Assuming, arguendo, that we could reach the merits of Mooney's first contention, we would, nevertheless, determine that the trial court did not err in finding that Dorthea Woods was not legally responsible for the debts incurred by the Medical Arts Pharmacy during the period of time covered by the lease which she co-signed with her husband Robert in 1968.

The court was presented with evidence from which it could have concluded that Dorthea was a partner in the pharmacy business with Robert and, therefore, was legally liable for the debts incurred by that business operation, or it could have concluded, as it did, that Dorthea was not a partner and, therefore, not liable for the debts of the business.

The facts which tend to indicate that Dorthea was a partner in the business are as follows:

She signed the lease in 1968, thereby, obligating herself to the Dannachers for the lessee's promises which were contained therein. She remained obligated to the Dannachers on that lease until she and Robert were evicted in October, 1972, even though the lease itself had expired in October, 1971.[1] From 1968 through

---

1. The lease signed by the parties in October, 1968 contained a provision which would allow the lease to be renewed by the mutual agreement of the parties.

1972 Dorthea's name also appeared on the tax forms which showed the profits and losses of the Medical Arts Pharmacy. It should be noted, however, that the Woods filed a joint return for these years, and the form, which showed the profits and losses of the business, instructed the preparer to include the taxpayers' names as they appeared on the Internal Revenue Service Form 1040.

The facts which tend to indicate that Dorthea was not a partner with Robert in the operation of the Medical Arts Pharmacy are as follows:

Dorthea did not actively participate in the operation of the drugstore. She rendered occasional service as a clerk when circumstances required. Dorthea was not involved in the hiring of employees, nor did she pay any bills for the business. There is no evidence that Dorthea ever kept the books for the business or ever shared in the profits, except in an indirect way through her husband. Dorthea's signature on the lease is not conclusive of the existence of a partnership agreement between her and Robert.

The trial court weighed all the evidence and concluded that no partnership existed between Dorthea and Robert. We cannot weigh the evidence, but can only look at the evidence in a light most favorable to the judgment. Therefore, from the evidence which has been presented to us, we cannot say that, as a matter of law, the trial court erred in its determination.

*ISSUE TWO*

Mooney contends that, as a matter of law, Robert Woods was an agent of the Dannachers in that he was empowered by the

Such a renewal provision, which does not contain specific criteria for the determination of the duration of the renewed lease and the amount of rent to be paid, is unenforceable. See *Puetz v. Cozmas* (1958), 237 Ind. 500, 147 N.E.2d 227. However, when a lessee under a lease for a definite term holds over after the expiration of that term, the lessor has the option of treating the lessee as a trespasser or of treating the lessee as a tenant. See *Hablich v. University Park* (1912), 177 Ind. 193, 97 N.E. 539 and *Gordon v. Tennant* (1940), 108 Ind. App. 326, 26 N.E.2d 559. In the absence of agreement to the contrary when a tenant holds over beyond the expiration of the lease, and the lessor does not treat the tenant as a trespasser by evicting him, the parties are deemed to have continued the tenancy under the terms of the expired lease. See *New York, C. & St. L. Railway Co. v. Randall* (1885), 102 Ind. 453, 26 N.E. 122 and *Myers v. Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577.

lease to purchase supplies in order to replenish the inventory owned by the Dannachers. We do not agree.

Mooney appeals from a negative judgment. Therefore, in order to obtain reversal, it must show that the trial court's decision was contrary to law by showing that the evidence was without conflict, that it could have led to but one conclusion, and the trial court reached the opposite conclusion. See *Stanray Corp. v. Horizon Construction, Inc.* (1976), 168 Ind. App. 164, 342 N.E.2d 645.

In *Department of Treasury v. Ice Service* (1942), 220 Ind. 64, 41 N.E.2d 201, 203, our Supreme Court stated:

" 'Agency' has been defined by the American Law Institute as follows: 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and *subject to his control,* and consent by the other so to act.' Restatement of the Law of Agency, § 1." (Our emphasis)

It could be argued in the case at bar that there existed an agreement between the Dannachers and the Woods, that the Woods would purchase items for the Dannachers, and thereby would be acting for and on behalf of the Dannachers. However, the evidence presented can in no way be construed to show that the Woods were subject to the control of the Dannachers.

Robert Woods controlled every facet of the drugstore operation. He hired employees and set their wages and hours. He purchased supplies, paid the rent, compiled tax data, and kept his own books and records. The Dannachers had absolutely no control over the operation of the Medical Arts Pharmacy, including the buying and selling of inventory. The Woods' only obligation to the Dannachers with regard to the inventory was to maintain such inventory and return it to the Dannachers at the expiration of the lease in such amount and condition that its value would be the same as when the lease was signed.

We are of the opinion that the lease executed by the parties in 1968 created a landlord and tenant relationship and that it did not

further, by requiring the Woods to return the inventory to Dannachers, create a principal and agent relationship. Therefore, the trial court's decision was not contrary to law.

*ISSUE THREE*

Mooney contends that the agreement between the Dannachers and the Gackenheimers was a transfer in violation of the Bulk Transfers Act found at IC 1971, 26-1-6-101 through 26-1-6-110 (Burns Code Ed.). The Bulk Transfers Act provides that before the transferor can transfer in bulk a major part of the materials, supplies, merchandise, or inventory of his business, the transferee must give prior notice of the transfer to all creditors of the transferor who have a claim on all or part of those materials, supplies, merchandise, or inventory.

For the reason that we have determined, *supra*, that Mooney was not a creditor of the Dannachers with regard to the inventory of the Medical Arts Pharmacy, which was returned to the Dannachers by the Woods, Mooney would have no interest in any transfer of that inventory from the Dannachers to the Gackenheimers. Therefore, Mooney is not entitled to the protection provided to creditors under the Bulk Transfers Act.

Judgment affirmed.

Robertson, C.J. and Garrard, J., by designation, concur.

NOTE—Reported at 371 N.E.2d 400.