WILLIAM EUGENE MYERS *v.* J. LEE MARIS.

[No. 1-474A52. Filed April 30, 1975.]

*Clelland J. Hanner, John E. Dowd,* of Rockville, *Frank N. Howard, McGaughey, Howard & Morell,* of Crawfordsville, for appellant.

*R. M. Kroger, Kroger, Gardis & Regas,* of Indianapolis, *Carl F. Henthorn, Harding & Henthorn,* of Crawfordsville, *Alfred V. Ringer,* of Williamsport, for appellee.

LYBROOK, J.—Plaintiff-appellant William Eugene Myers initiated this action seeking, on various theories, recovery for work performed and, further, claiming damages allegedly incurred through reliance on an oral agreement to extend or renew a farm lease. At the conclusion of the plaintiff's evidence, the trial court granted the motion of defendant-appellee J. Lee Maris for judgment on the evidence, which ruling is assigned as error in this appeal.

Prior to 1966, Myers owned and operated a farm in Fountain County. Maris owned a 205 acre farm in the same vicinity. In 1964, Maris, as owner, and Myers, as tenant, executed a lease of the 205 acre farm, which read in pertinent part:

"'***WITNESSETH: that said owner hereby rents and leases to said tenants from March 1, 1964 to March 1, 1965, the following described real estate situated in Parke County, Indiana, to-wit:

The farm of 205 acres known as the 'Scott land', the legal description of which is contained in the deed to said Maris recorded in Deed Record ——, at page ——.

And in consideration therefor, said tenants agree to pay as rent one-half (½) of all grain grown on said premises. . . .

\* \* \*

It is further agreed that said farm shall be operated in compliance with the program of the Parke County A.S.C. and that all feed-grain payments shall belong to said owner. That said parties shall cooperate with each other in the production of crops and management of said farm for the

greatest possible ultimate benefit of both parties consistent with modern farm practice, but that said owner shall have the right to determine ultimately all questions as to the management of said farm and to the planting of said crops thereon.

\* \* \*

Said tenants further agree to operate said farm in a good, husband-like manner and to keep all weeds mowed or sprayed. . . .

\* \* \*

That said tenants shall give possession of said premises at the expiration of this tenancy without further notice or demand. \* \* \*"

While the term of the lease was limited to one year, Myers remained in possession of and farmed the land during 1965. On November 1 of that year, Myers was served with a notice to quit and deliver up possession "at the expiration of the current year of the tenancy."

The Parke County A.S.C. program to which the lease referred is supervised by the U.S. Department of Agriculture through the Agriculture Stabilization Conservation Service. A farmer electing participation in the program as it existed during 1964 was required to leave a certain percentage of his tillable acreage unplanted, control the growth of weeds on the unplanted land, and certify compliance with the program by a certain date. Participation in and compliance with the program requirements entitled the farmer to governmental payments. Maris registered his farm for the A.S.C. program in both 1964 and 1965. In accordance with the program guidelines, only eighty-five acres were planted in crops.

The farm was found not to be in compliance and a letter, dated September 16, 1964, was sent to Maris stating that his unplanted land would have to be cleared of weeds and seeded or no A.S.C. payment would be made. The failings noted in the letter were corrected and Maris received the payments in 1964 and 1965.

Myers did not testify at trial. Rather, evidence of the relationship between the parties was presented by Myers' son, Courtney, who assisted in his father's farming operations

during the period in question. During 1964 and 1965, Myers, with Courtney's assistance, cleared the unplanted land of weeds by discing a total of eight times for the purpose of compliance with the A.S.C. program. Courtney testified that care for the unplanted acreage was not Myers' responsibility under the lease agreement and that Maris agreed to pay Myers for tilling the unplanted land. In the fall of 1965, Myers sent Maris a bill for the discing. This sum remained unpaid and recovery therefor is sought in this action.

Courtney testified that he was present during three conversations between Myers and Maris. The first of these conversations took place during the latter part of 1964. Therein, Myers requested a contract for the following year. Maris responded that no contract was necessary and that Myers could continue to farm the land as long as he desired. In the spring of 1965 as the land was being prepared for planting, Myers again requested a contract. Again, Maris responded that none was necessary. During a conversation in the summer of 1965, Maris stated that in the next year the entire farm could be planted with corn. Myers responded that he would have to purchase more equipment to be able to handle the whole farm in corn. Following the acquisition by Myers of approximately $20,000 of farming equipment, he was served with the notice to quit. Thereafter, Myers sold both the additional equipment and his own 150 acre farm and acquired a smaller farm. In this action, Myers sought damages due to alleged detrimental reliance on the representation that he could continue to farm Maris' land.

## I.

Motions for judgment on the evidence (directed verdict) are governed by Ind. Rules of Procedure, Trial Rule 50. The granting of such a motion and direction of a verdict for the defendant at the close of the plaintiff's evidence is proper only in the absence of evidence or reasonable inference on at least one essential element of the plaintiff's case. *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849; *Johnson* v. *Mills* (1973), 157 Ind.

App. 620, 301 N.E.2d 205. The evidence must be without conflict and susceptible of but one inference, that being in favor of the moving party. *Wroblewski* v. *Grand Trunk Western Ry. Co.* (1971), 150 Ind. App. 327, 276 N.E.2d 567; *Memorial Hospital of South Bend* v. *Scott* (1972), Ind. App., 290 N.E.2d 80; *Johnson* v. *Mills, supra.* In examining the evidence the trial judge must draw all fair and rational inferences in favor of the party opposing the motion and give that party every favorable intendment of the evidence. *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784.

In reviewing a judgment entered on a directed verdict, this court applies the same standards which govern the trial judge in ruling upon the motion. Our task, therefore, is to determine whether there was any evidence requiring submission of the cause to the jury. See, *Galbreath* v. *City of Logansport* (1972), 151 Ind. App. 291, 279 N.E.2d 578; *Smith* v. *Chesapeake and Ohio Railroad Co.* (1974), 160 Ind. App. 256, 311 N.E.2d 462. Since recovery was sought on two separate claims—compensation for work performed and damages incurred through detrimental reliance—each must be hereinafter considered separately.

## II.

No error has been demonstrated in the entry of judgment on the evidence with respect to Myers' claim for compensation for work performed.

Courtney Myers testified that the unplanted land was disced a total of eight times during the crop years 1964 and 1965. That some of this work was performed subsequent to March 1, 1965, the date upon which the written lease expired, does not affect our inquiry. As our Supreme Court stated in *Harry* v. *Harry* (1891), 127 Ind. 91, 26 N.E. 562:

"It is well settled that where the duration of the tenancy is definitely fixed by the terms of the agreement under which the tenant goes into possession of the premises which he is to occupy, and he continues to occupy after the close of the term without a new

contract, the rights of the parties are controlled by the terms and conditions of the contract under which the entry was made.

"The tenant is still a tenant by contract. *Tinder* v. *Davis,* 88 Ind. 99; *Coomler* v. *Hefner,* 86 Ind. 108; *Bollenbacker* v. *Fritts,* 98 Ind. 50; *New York, etc., R.W. Co.* v. *Randall,* 102 Ind. 453." See also, *Walsh* v. *Soller* (1934), 207 Ind. 82, 190 N.E. 61, rehearing denied, 191 N.E. 334.

Therefore, we must examine the written agreement in an attempt to ascertain the respective rights and liabilities of the parties.

In the absence of ambiguity, the construction of a written contract is a question of law to be resolved by the court. *Wilson* v. *Kauffman* (1973), 156 Ind. App. 307, 296 N.E.2d 432; *Rochester Capital Leasing Corp.* v. *Mc-Cracken* (1973), 156 Ind. App. 128, 295 N.E.2d 375. The test for determining ambiguity is whether reasonable men would find the contract subject to more than one construction. *Ebert* v. *Grain Dealers Mutual Ins. Co.* (1973), 158 Ind. App. 379, 303 N.E.2d 693; *Hauck* v. *Second National Bank of Richmond* (1972), 153 Ind. App. 245, 286 N.E.2d 852. Application of this test to the contract in the case at bar compels the conclusion that it is subject to but one reasonable construction, being that Myers was obligated thereunder to perform the work for which he now claims entitlement to compensation. The contract recited that Myers was leasing the entire "farm of 205 acres." The "farm" was to be operated in accordance with the A.S.C. program. Further, Myers agreed to operate the "farm" in a good husband-like manner and keep the "farm" clear of weeds.

While the word "farm" in the granting clause was defined as the entire 205 acres, including both planted and unplanted ground, Myers apparently would have the word limited in the clause providing for weed control to include only the 85 acres on which he was growing corn. However, appellant has wholly failed to propound any reason for the adoption of such a varying interpretation. In fact, appellant's argument with respect to his claim for compensation for work performed is

based upon the apparent assumption that the terms of the written lease are wholly inapplicable.

In construing a contract, the court cannot extract particular clauses, but must read the contract as a whole, giving effect to each provision if possible. *Allied Structural Steel Co.* v. *State* (1970), 148 Ind. App. 283, 265 N.E.2d 49. See also, *Hauck* v. *Second National Bank of Richmond, supra.* Construing the various clauses together, consistency is obtained only by accepting the interpretation that Myers agreed to clear the weeds on the entire 205 acres.

As this court wrote in *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 183 N.E.2d 842:

"To determine the meaning to be given the words of the agreement in question, the rule stated in Haworth v. Hubbard et al. (1942), 220 Ind. 611, 44 N.E.2d 967, might well serve as the accepted guide. The rule is stated as follows:
'It is everywhere agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject-matter thereof, it is clear that some other meaning was intended. * * *.' "

Further, it was stated in *Garrett* v. *Northwestern Mutual Life Ins. Co.* (1942), 111 Ind. App. 515, 38 N.E.2d 874:

"It is true that the same words may be used in a different sense in different parts of the same instrument but surely there is no logic in interpreting their meaning differently unless some reason therefor is disclosed in the different contexts or in the different purposes sought to be accomplished."

We turn now to an examination of the argument propounded in support of Myers' contention that the court erred in entering judgment on the evidence with respect to his compensation claim. Our attention is directed to the testimony of Courtney Myers as to the fact of performance of the work and agreement by Maris to remit payment therefor and also to testimony concerning the reasonable value of the work. Clinging to the assumption that the work was not within the scope of his duties as defined by the written lease, Myers

relies upon this extrinsic evidence as supporting recovery on a theory of implied contract. However, as this court wrote in *Engelbrecht* v. *Property Developers, Inc.* (1973), 156 Ind. App. 354, 296 N.E.2d 798:

> "An implied contract cannot exist where an express contract covers the identical subject. 6 I.L.E., Contracts, § 6, p. 73; 17 C.J.S. Contracts § 5, p. 564. Where there ██ is a contract controlling the rights of the parties there can be no recovery on the theory of *quantum meruit*. 98 C.J.S. Work and Labor § 29, p. 759."

Myers' extrinsic evidence tends at best to establish an erroneous construction placed upon the agreement by the parties. However, as this court recently stated in *Fort Wayne Bank Building, Inc.* v. *Bank Building and Equipment Corp. of America* (1974), 160 Ind. App. 26, 309 N.E.2d 464:

> ". . . [I]f the meaning of a contract is clear and unambiguous on its face, its effect will not be controlled by an erroneous construction placed on the agreement by the parties. This is because such extrinsic evidence may not be considered where no ambiguity exists in the contract. *Walb Construction Co.* v. *Chipmen, supra; Morris* v. *Thomas* (1877), 57 Ind. 316; *Smith* v. *Mercer* (1948), 118 Ind. App. 575, 79 N.E.2d 772. Thus, where the language of the contract is plain as to the intent of the parties, and there is no defect asserted in the formation of the contract, that language is conclusive. *Reed et al.* v. *Lewis et al.* (1881), 74 Ind. 433, 439; *Miller* v. *Frankfort Bottle Gas, Inc.* (1964), 136 Ind. App. 456, 202 N.E.2d 395."

As further stated in the above quoted case it is true that evidence extrinsic to a contract may be properly considered where fraud, mistake, illegality, duress or undue influence are shown. However, no such defect is argued or asserted in the case at bar. It is further true that parties may mutually modify a contractual undertaking and may execute a supplementary or separate contract. However, the new obligation must be supported by consideration. *Shanks* v. *Fisher* (1955), 126 Ind. App. 402, 130 N.E.2d 231. We find no evidence which would support a finding of a modification of the agreement supported by valid consideration.

We conclude that the evidence which might properly have been considered by the trial court was without conflict and susceptible of but one inference, that being in favor of Maris. Therefore, the court did not err in entering judgment on the evidence with respect to Myers' claim for compensation.

### III.

We conclude that the trial court erred in entering judgment on the evidence with respect to Myers' claim for damages incurred through alleged detrimental reliance.

As we determined under the preceding issue, while the written lease expired on March 1, 1965, its terms and conditions continued to control the rights of the parties while Myers thereafter remained in possession of and continued to farm the land. *Harry* v. *Harry, supra.* In our opinion, the conversation between Myers and Maris during the summer of 1965 in which Maris represented that the entire farm could be planted in corn the following year and to which Myers responded that he would need to purchase more equipment was sufficient to constitute an oral agreement to extend or renew the lease for an additional term covering the 1966 crop year. In *Magee* v. *Indiana Business College* (1929), 89 Ind. App. 640, 166 N.E. 607, it is written:

> "An oral agreement to renew and extend a lease acted upon by either party, by the expenditure of money, taking possession, etc., is binding on the parties and may be enforced. *St. Joseph, etc., Co.* v. *Globe, etc., Co.* (1901), 156 Ind. 665, 59 N.E. 995; *Habich* v. *University Park Bldg. Co.* (1912), 177 Ind. 193, 97 N.E. 539; *Bollenbacker* v. *Fritts* (1884), 98 Ind. 50."

At the same time, however, we are of the opinion that Myers could not have reasonably relied on the alleged representations that he could continue to farm the land as long as he desired as extending the term of the lease beyond the 1966 crop year. This conclusion would seem to be a logical corollary of the rule that leases for indefinite periods or "general tenancies" are deemed to be tenancies from year to year. See, *Swan* v. *Clark* (1881), 80 Ind. 57.

Maris submits that no evidence was presented from which it might be found that the equipment acquired by Myers during the latter part of 1965 was purchased in reliance upon the alleged agreement concerning the farming operation for the following year. He argues that to the contrary, the evidence supports an inference that the purchase was made merely to replace worn equipment. We cannot agree. During the alleged conversation with Maris, Myers expressly stated that the increase in the acreage to be farmed in 1966 would necessitate the purchase of more equipment. The equipment was in fact purchased a few months later. This evidence supports an inference that the equipment was purchased in reliance upon Maris' representation. It is of no consequence that conflicting inferences might be drawn from the evidence since the trial court was bound to draw all fair and rational inferences in favor of Myers as the non-moving party. *Jordanich* v. *Gerstbauer, supra.*

Both Myers and Maris agree that the damages sought to be recovered by Myers must be a proximate result of a breach by Maris, citing respectively, *Sourbier* v. *Claman* (1936), 101 Ind. App. 679, 200 N.E.721 and *Fuller* v. *Curtis* (1884), 100 Ind. 237. Courtney Myers testified that in addition to the land leased from Maris, his father farmed 235 to 240 acres, comprised of 105 acres owned by a third landowner and approximately 130 tillable acres of Myers' own farm. Following receipt of the Notice to Quit in 1965, Myers sold his own farm and purchased a smaller farm of between 50 and 60 acres. In 1966, Myers farmed the 50 to 60 acres which he purchased and the 105 acres belonging to the third landowner. In addition, Myers assisted some other farmers in plowing. Myers sought to locate other land to farm in 1966, but was unsuccessful. Due to the reduced acreage which Myers was farming, he was unable to meet his payments on the new equipment and was required to sell the same in 1966.

Maris contends that any damage suffered by Myers was the result of his action in selling his farm and purchasing a smaller one. However, the question of whether Myers thereby

contributed to his own injury should have been submitted to the jury for resolution since conflicting inferences might have been drawn from the evidence. See, *Wroblewski* v. *Grand Trunk Western Ry. Co., supra.*

In support of his claim for damages, Myers presented evidence of the purchase price of the new equipment and the amounts received at the subsequent sale. Maris contends that in the absence of specific evidence of the value of full performance by Maris of the agreement, any award of damages would have been based on mere speculation. That the amount of damages may not have been established with absolute mathematical certainty does not, in our opinion, entitle Maris to judgment on the evidence. As was recognized in *American Fletcher National Bank* v. *Flick* (1969), 146 Ind. App. 122, 252 N.E.2d 839:

> "When it is found that a harm has been caused and the only uncertainty is as to the dollar value of the harm, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever. Wakeman v. Wheeler & Wilson Mfg. Co. (1886), 101 N.Y. 205, 4 N.E. 264; 11 Williston on Contracts (3rd ed., 1968), § 1345."

Assuming the truth of Myers' evidence and drawing all fair and rational inferences therefrom in his favor the jury could have found that Myers expended money in reliance on an oral agreement extending or renewing the lease of Maris' land for the 1966 crop year and thereafter suffered damages as the result of a subsequent breach of that agreement by Maris.

## CONCLUSION

With respect to Myers' claim for compensation for work performed, the judgment of the trial court must be affirmed. However, the trial court erred in entering judgment on the evidence with respect to Myers' claim for damages incurred through Maris' alleged breach of the oral agreement to extend or renew the lease agreement through the 1966 crop year. With respect to that claim, the judgment is reversed with instructions to grant Myers a new trial.

Affirmed in part, reversed in part.

Robertson, C.J., concurs.

Staton, P.J. (participating by designation), concurs.

NOTE.—Reported at 326 N.E.2d 577.