BOARD OF DIRECTORS, BEN DAVIS CONSERVANCY DISTRICT *v.* CLOVERLEAF FARMS, INC.

[No. 2-1274A296. Filed January 20, 1977. Rehearing denied March 24, 1977. Transfer denied June 10, 1977.]

*Phillip C. Klotz,* of Noblesville, *Robert E. Sward,* of Indianapolis, *Andrew Jacobs, Sr.,* of Indianapolis, for appellant.

*J. C. Burris, Burris & Gross,* of counsel, of Indianapolis, *Campbell, Kyle, Proffitt, Cook & Campbell,* of Noblesville, for appellee.

LYBROOK, J.—Defendant-appellant Ben Davis Conservancy District (District) appeals from a decision entitling Cloverleaf Farms, Inc. (Cloverleaf) to a remuneration from the District for the cost of sewers installed on land developed by Cloverleaf. Cloverleaf claimed below that an easement contract to which they were successors in interest, entitled them to installed sewers at the District's expense.

On April 27, 1960, the District and James Hardin entered into an agreement whereby Hardin granted to the District a sewer easement over his land. As partial consideration for the easement the District agreed that the following clause be included in the agreement:

"The Grantee agrees further that it will permit the Grantor, or his successors, heirs, representatives, or assigns, in interest, to connect to and use the sewer system of the Ben Davis Conservancy District for the whole or any part of said real estate upon the same basis and under the same conditions that such sewer system is used by land owners within the Ben Davis Conservancy District."

Subsequently, Hardin conveyed the land to Cloverleaf, which developed it into a housing subdivision. After a dispute with the District concerning the above clause, Cloverleaf installed sewers as the land was improved.

Cloverleaf claims that the easement is not ambiguous, and that since the District installed sewers in a nearby neighborhood at the time of the making of the easement, the District was obligated to install sewers in their area as well, pursuant to the above clause.

Leslie Cadwell, a former official of the District, testified that sewers in the District were initially paid for with a bond issue, which was subsequently retired through taxes placed on the beneficiaries of the sewer system. None of the proceeds of the bond issue were committed to construction of sewers in the Cloverleaf addition, yet residents of Cloverleaf at the time of the suit were subject to the same sewer tax as other residents of the District.

The District contends that after the date of the agreement new housing had to install its own sewers. On the other hand, existing housing brought into the system had sewage facilities provided by the District. Thus, the phrase ". . . upon the same basis and under the same conditions . . ." would mean that Cloverleaf, being new housing, had to supply its own sewers.

Of interest is the testimony of Hardin, original signatory to the agreement. He stated . . .

"Q. Tell me this, Mr. Hardin, just—just—you can just say anything you want to as far as I'm concerned.

I'm going to ask you this question. I want you to tell Judge New what if anything was ever said between you and any member of the Ben Davis Conservancy District Board, its' attorney or anyone else that led you to think that under this easement agreement, the Ben Davis Conservancy District was going to pay for the laying of mains in the development on your land. What if anything, was ever said?

A. Nothing was said but only our original instrument is all that we go on. And the Judge will have to decide whether he does or he does not."

\* \* \*

"Q. Well—well when you signed that agreement that merely said they would be brought in and treated the same as anyone else in the District, did you even have in mind who was going to pay for sewers in the streets?

A. No, I didn't. I also didn't know who was going to buy it or who would need the sewer. Whether you need one or twenty."

Later on Cadwell responded to a question from the bench.

"THE COURT: Did any of them say to you prior to the date of this letter[2] that the agreement, easement, bound the District to install sewers?

A. No sir. They never did.

O. Then was this letter that you received from Mr. Butler, the first intimation that you had that they made any such claim or were about to make any such claim?

A. Yes sir, that's right."

Cadwell also denied that it was ever considered that the District was to pay for Cloverleaf's sewers.

The District, throughout the trial and in its brief, maintained that events after the signing of the easement delineate what is meant by the following clause:

"The Grantee agrees further that it *will permit* the Grantor, or his successors, heirs, representatives, or assigns, in interest, to connect to and use the sewer system of the Ben Davis conservancy District for the whole or any part of said real estate upon the same basis and under the same conditions that such sewer system *is used* by land owners

---

2. The letter referred to was dated July 12, 1961, and the easement was effective April 27, 1960.

within the Ben Davis Conservancy District." (Emphasis supplied).

Cloverleaf, through the trial and in its brief, maintained that events prior to the execution of the easement determined its meaning.

The problem arises from the above clause. The emphasized phrasing can either be construed to relate to the time at which a connection would be made or to the time the contract was made. This is so because of the use of the words "will permit" and "is used". The conflict between these two tenses gives rise to uncertainty about what time period is being discussed in relation to "same basis" and "same conditions". It should be noted that the ambiguity would not have arisen had the District treated all parties alike over the time period in question. This would have resulted in only one standard of behavior on the part of the District that "same basis" could possibly have related to.

In construing a contract, several maxims should be kept in mind. First, the instrument should be construed as a whole, *Linton* v. *Linton* (1975), 166 Ind. App. 409, 336 N.E.2d 687, and, it should be so construed, if possible, as to render the agreement valid rather than void. *Wiltse* v. *Cornell* (1970), 146 Ind. App. 447, 256 N.E.2d 572. Furthermore, the purpose of construing a contract is to ascertain the intention of the parties at the time of the making of the contract, *Robison* v. *Fickle* (1976), 167 Ind. App. 651, 340 N.E.2d 824, from the language used in the instrument, *Fort Wayne Bank Bldg., Inc.* v. *Bank Bldg. & Equipment Corp.* (1974), 160 Ind. App. 26, 309 N.E.2d 464, unless there is an ambiguity. *House* v. *Lesow* (1975), 167 Ind. App. 449, 339 N.E.2d 86.[3] The test for determining whether a contract is

3. Generally, ambiguities are of two types, patent and latent. A patent ambiguity is apparent on the face of the instrument, while a latent ambiguity arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument. *Hauck* v. *Second National Bank of Richmond* (1972), 153 Ind. App. 245, 286 N.E.2d 852. Here, there

ambiguous is whether or not reasonable men would find the contract subject to more than one interpretation. *Myers* v. *Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577. Furthermore, where an agreement is so indefinite upon an essential element that it cannot be construed with reasonable certainty, and where it is not clarified by extrinsic circumstances, there is nothing for the court to construe. This simply means that the court cannot re-write and then enforce contracts, which, to the knowledge of the court, the parties themselves did not enter into. *Puetz* v. *Cozmas* (1958), 237 Ind. 500, 147 N.E.2d 227.

As to the substantive aspect of what is to be construed, even an implied contract requires a "meeting of the minds", *Engelbrecht* v. *Property Developers, Inc.* (1973), 156 Ind. App. 354, 296 N.E.2d 798, and such is a requisite to the existence of a valid contract, *Ind. Service Corp.* v. *Town of Flora* (1941), 218 Ind. 208, 31 N.E.2d 1015. But this actually says no more than was said when it was held that a court may not re-write a contract for the parties, *Puetz, supra.*

A helpful analytical framework is suggested by 3 Corbin, *Corbin on Contracts* § 537 (1960). There, if the promisor knew or had reason to know the meaning that the promisee in fact gave to the promisor's words, then the promisee's understanding shall be given effect. This is explained as being the result of securing the realization of expectations reasonably induced by the expressions of agreement. As pointed out by Corbin, before determining legal effects the court must discover what the promisee's meaning

---

is a patent ambiguity as to what time period is being talked about, but, in effect, what transpired here at the time of the making of the contract is a latent ambiguity. This is so because the District treated annexees differently after the execution of the easement.

There could have been no argument here if the District treated all members of the Conservancy District (except Cloverleaf) the same. As it was, the underlying facts gave force to a patent ambiguity, rendering it also latent. Thus, surrounding circumstances are properly considered. *Hauck, supra.*

was and whether the promisor knew or had reason to know that meaning. This test was expressed by our Indiana Supreme Court in *Western and Southern Life Ins. Co.* v. *Vale* (1938), 213 Ind. 601, 12 N.E.2d 350.

Since there is an ambiguity, circumstances other than the document may be considered, along with the whole document in attempting to ascertain the intent of the parties at the time of the agreement, keeping in mind that the court may neither create nor re-write duties and liabilities.

Thus, it may be seen from an initial examination of the document that Hardin intended at *least* to be allowed to connect to the sewers of the District. This much is clear from the document. As to who must bear the cost, that is, from the instrument alone, difficult to discern. If the time period at the making of the agreement is adopted, Cloverleaf should prevail. However, if the time period subsequent to the agreement (when the connection was made) is adopted, the District should prevail.

Hardin testified that he had no expectation concerning payment for the cost of the sewer. He repeatedly stated that consideration of such cost was not made by him, and we can safely conclude that no behavior or expression of agreement by the District induced Hardin to believe that the District was to pay the cost of sewer installation. This dovetails with the asserted absence in the District (the promisor) of any knowledge that Hardin (the promisee) placed the cost of the eventual sewers upon the District. Finally, there is no indication that the District should have had reason to know that Hardin placed such an interpretation on the agreement, particularly so in light of his subsequent denial of any such intent. Hardin's lack of any expectation as to who would pay for the sewers, coupled with a similar lack on the part of the District, precludes this court from affirming the decision. Were we to affirm the decision we would be adding an aspect to the document that the parties themselves failed to

include. Had there been evidence that Hardin desired to be treated the same as others at the time of the making of the agreement, and that the District knew or should have known of that, we would not be forced to reverse. Then, evidence that the District installed the sewers in other projects at the time of the agreement, would be sufficient. As it is, we must hold that the rule favoring viability of the instrument, *Wiltse, supra,* is overcome by the mandate not to create or reform agreements of the parties, *Puetz, supra.*

The decision of the trial court, is, accordingly, reversed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 359 N.E.2d 546.

## ON PETITION FOR REHEARING

LYBROOK, J.—Petitioner Cloverleaf Farms, Inc., (Cloverleaf) requests a rehearing on the grounds that this Court weighed the evidence when rendering the original opinion.

As part of its argument Cloverleaf points to the original easement, specifically that part which states:

> "It is understood that the district will lay and install said line in substantial compliance with the plans and specifications of J. B. Wilson and Associates, Engineers for the Ben Davis Conservancy District, a copy of the drawing describing the nature of the sewer line is attached hereto and made a part of this easement and that said installation is a part of the sewers and sewage system to be installed in said District by the Grantee."

Petitioner recommends this language to the Court's attention while denominating it a "recital of partial consideration" (Petitioner's Brief, p. 4). Petitioners rely on this language both read together with the disputed clause and read together with certain testimony of Mr. Hardin.

The fallacy in this argument is that the cited language in the easement, supra, in no way relates to the present action,

nor is it a "recital of partial consideration." The above language very obviously relates to the large line that was the subject of the easement, and not the manifold sewer system eventually constructed by Cloverleaf. Immediately prior to the above language is a description of a sixteen-foot wide strip of land which was to contain the line. The subsequent language then refers to "said line", not "said sewer line," as quoted by petitioners. The difference is important, since it reveals that the quoted language is only referring to that small strip of land that was granted in the easement, and not any subsequent development.

Petitioner also relies on testimony of Roy Prock. However, Prock was not privy to or had any knowledge concerning the origin of this easement. His testimony concerned a time period long after the creation of this document, and is therefore irrelevant. *Board of Directors* v. *Cloverleaf* (1977), 171 Ind. App. 682, 359 N.E.2d 546.

To reiterate, the issue before the court was the intention of the persons' contracting (and no others) in the face of the ambiguity. Hardin and the District, the only parties to the contract, both denied any intent with respect to who was to pay.

The petition is, therefore, denied.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 360 N.E.2d 1039.