George D. ADAMS and Gary
A. Hunter, Appellants–
Plaintiffs,

v.

George H. REINAKER, Eric L. Hagan
and Michelle Hagan, husband and
wife, Sandra Willis and Billy Willis,
husband and wife, and Kimberly K.
Giles, Appellees–Defendants.

No. 41A05–0306–CV–288.

Court of Appeals of Indiana.

May 17, 2004.

---

Elizabeth A. Gamboa, Franklin, IN, Attorney for Appellants.

Lynette Gray, Johnson, Gray & MacAbee, Franklin, IN, George Patton, Jr., Cathy Elliott, Bernie Keller, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellees.

1. In a number of documents submitted in this appeal, the last name of these defendants is spelled "Hagen."

## OPINION

MAY, Judge.

George Adams and Gary Hunter (collectively "Adams"), owners of a driveway easement, appeal the order of the Johnson Superior Court granting judgment on the pleadings for defendants George Reinaker, Eric and Michelle Hagan[1], Sandra and Billy Willis, and Kimberly Giles (collectively "the Reinaker defendants"), who own properties subject to the easement and use it to access their properties. Adams argues on appeal there are questions of fact concerning whether the parties to the conveyance of the easement contemplated use by multiple, concurrent subsequent owners when the language in the deed indicates Adams and Adams' successors and assigns would bear all the cost of repair and maintenance.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On February 8, 1996, the original owner of all the property involved in this case, Marguerite Mullendore, conveyed a portion of her property to Adams. In the same deed, she granted an easement across her remaining land so Adams could access his property from a road. The easement was "permanent" and "non-exclusive." (Appellant's App. at 25.) The deed provided the "easement is granted and accepted upon the express understanding and agreement that maintenance thereof shall be by and at the sole expense of [Adams]." (*Id.*)

Later, the Reinaker defendants acquired land subject to the easement from subsequent owners of the Mullendore property.[2]

2. George Reinaker acquired five acres from Donna Walker–Whitesell in October 1996; the Hagans obtained one acre from ReNue Homes, Inc. in January 1998; the Willises

The Reinaker defendants use the easement to access their properties from the road, and Adams has borne all the expense of repairing and maintaining the driveway easement. Adams sought contribution from the Reinaker defendants for the maintenance expenses but they would not contribute.

On September 24, 2002, Adams sought a declaratory judgment apportioning costs among the users of the easement for past and future repair and maintenance. In response, the Reinaker defendants moved for and were granted judgment on the pleadings pursuant to Ind. Trial Rule 12(C).

## DISCUSSION AND DECISION

Our review of a judgment on the pleadings is *de novo*. *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 661 (Ind.Ct. App.2002), *reh'g denied, trans. denied* 783 N.E.2d 695 (Ind.2002). Such a motion "tests the sufficiency of the complaint to state a redressable claim" and should be granted "only when it is clear from the pleadings that the non-moving party cannot in any way succeed under the facts and allegations therein." *Circle Centre Dev. Co. v. Y/G Indiana, L.P.*, 762 N.E.2d 176, 178 (Ind.Ct.App.2002), *trans. denied* 774 N.E.2d 518 (Ind.2002). We look solely at the pleadings and accept all well-pleaded facts as true. *Id.* The moving party is deemed to have admitted those facts in favor of the non-moving party and we will draw all reasonable inferences in the non-moving party's favor. *Id.*

The Reinaker defendants contend Adams is without relief as a matter of law because Adams expressly agreed in the original deed that as grantee of a perma-

nent non-exclusive easement from Mullendore, Adams would be solely responsible for its repair and maintenance. The relevant portion of the deed reads:

> Also, a permanent non-exclusive easement for ingress and egress upon and over a strip 20.0 feet in width. . . . The foregoing easement is granted and accepted upon the express understanding and agreement that maintenance thereof shall be by and at the sole expense of [Adams].

(Appellant's App. at 25.) The Reinaker defendants further contend there is no ambiguity in light of the clear language of the deed. Because the language is unambiguous and clearly establishes Adams is responsible for maintenance costs, they assert, Adams cannot later claim others who use the easement must share in this cost.

Adams argues the agreement contemplated use by only Mullendore and Adams; in view of subsequent purchasers now using the easement, he asserts, costs should be apportioned among all users in common.

"The object of deed construction is to ascertain the intent of the parties and where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone." *Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 757 (Ind.Ct.App.2000) (citing *Brown v. Penn Central Corp.*, 510 N.E.2d 641, 643 (Ind.1987)), *reh'g denied, trans. denied* 783 N.E.2d 691 (Ind.2002). The Reinaker defendants claim there is no ambiguity in the deed and therefore no reason to go outside the deed to determine intent.

Generally, where no ambiguity is present the trial court is constrained by

were granted ten acres from William and Kimberly Giles in September 2000; and Kimberly Giles purchased a portion of the Willis-

es' property in 2002. (Appellant's App. at 2–5.)

the "four corners" rule. *Id.* That rule provides:

> [I]in construing [a] written instrument, the language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. Even if ambiguity exists, extrinsic evidence is only admissible to explain the instrument and not contradict it.

*Id.* at 758 (quoting *Lippeatt v. Comet Coal and Clay Co., Inc.,* 419 N.E.2d 1332, 1335 (Ind.Ct.App.1981)).

■ The Reinaker defendants argue ambiguity must appear on the face of the deed for parol evidence to be admitted, and ambiguity should not be created where none exists. *See, e.g., DeBoer v. DeBoer,* 669 N.E.2d 415, 421 (Ind.Ct.App.1996), *trans. denied* ("ambiguity allowing admission of parol evidence must appear on the face of the document; extrinsic evidence is not admissible in an attempt to create an ambiguity"). However, ambiguities in a document may be of two types, patent or latent. *Board of Directors, Ben Davis Conservancy District v. Cloverleaf Farms, Inc.* 171 Ind.App. 682, 689 n. 3, 359 N.E.2d 546, 549 n. 3 (1977), *reh'g denied* 171 Ind. App. 682, 360 N.E.2d 1039 (1977).

> A patent ambiguity is apparent on the face of the instrument and arises by reason of an inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning. Extrinsic evidence is not admissible to explain or remove a patent ambiguity. A latent ambiguity arises not upon the face of the instrument by virtue of the words used, *but emerges in attempting to apply those words in the manner directed*

*in the instrument.* Extrinsic evidence is admissible to explain or clear up a latent ambiguity.

*Hauck v. Second Nat'l Bank of Richmond,* 153 Ind.App. 245, 261–62, 286 N.E.2d 852, 862 (1972) (citations omitted, emphasis supplied), *reh'g denied.*

■ A document is found to be ambiguous only when reasonable persons find the contract subject to several interpretations. *Myers v. Maris,* 164 Ind.App. 34, 40, 326 N.E.2d 577, 581 (1975). In *Cloverleaf Farms,* we relied on an analytical framework articulated in 3 Corbin on Contracts § 537 (1960) to assist in making a determination about the parties' intentions:

> There, if the promisor knew or had reason to know the meaning that the promisee in fact gave to the promisor's words, then the promisee's understanding shall be given effect. This is explained as being the result of securing the realization of expectations reasonably induced by the expressions of agreement. As pointed out by Corbin, before determining legal effects the court must discover what the promisee's meaning was and whether the promisor knew or had reason to know that meaning.

171 Ind.App. at 687–88, 359 N.E.2d at 549.

Adams and the Reinaker defendants disagree as to the meaning of the term "nonexclusive" in the deed. The meaning of the term is not patently ambiguous. However, we find latent ambiguity as to whether the parties "contemplated that the easement would be used by others" as the Reinaker defendants assert (Br. of Appellees at 10), or whether the term "nonexclusive" refers only to shared use by the original grantor and grantee because "[t]here is no indication Adams intended this provision as an agreement to maintain and repair the easement for an indefinite number of other users." (Br. of Appel-

lants George Adams and Gary Hunter at 10.) Disagreement on the application of this term to the present circumstances in light of what Adams and Mullendore might have contemplated at the time the agreement was made gives rise to a latent ambiguity.

"A non-exclusive easement exists where the servient owner retains the privilege of sharing the benefit conferred by the easement." 28A C.J.S. *Easements,* § 164. This language supports Adams' argument that the Adams–Mullendore agreement contemplated use by only the two original parties. Adams was to pay for maintenance and repair, as the easement was essential for his use and enjoyment of his conveyed land and he would have greater occasion to use it. However, Mullendore might have wanted to retain use of the easement as well. Whether use by subsequent property owners was contemplated and whether Adams alone was to bear the burden of maintenance and repair is uncertain in light of these changed circumstances.

In *Cloverleaf Farms,* an agreement granted a conservancy district a sewer easement over grantor's land on condition "[g]rantee ... will permit the [g]rantor, or his successors, heirs, representatives, or assigns, in interest, to connect to and use the sewer system ... upon the same basis and under the same conditions ... used by land owners within the [district]." 171 Ind.App. at 684, 359 N.E.2d at 547. We determined the agreement was ambiguous as to whether the district was required to bear the costs of connection for future housing developed in the district. *Id.* at 688, 359 N.E.2d at 549.

The housing developer as successor in interest claimed the agreement was not ambiguous while the district argued that after the date of the agreement the developer of new housing was required to bear its own costs for connection. We reasoned "[s]ince there is an ambiguity, circumstances other than the document may be considered, along with the whole document in attempting to ascertain the intent of the parties at the time of the agreement, keeping in mind that the court may neither create nor re-write duties and liabilities." *Id.* The grantor testified he did not contemplate the district paying for subsequent users or consider who was going to buy the property and need sewers in the future. We noted that affirming the trial court's judgment for Cloverleaf would have added an element to the agreement the parties had failed to include. *Id.* at 688–89, 359 N.E.2d at 550.

Similarly, in the case before us, a question remains as to whether Adams and Mullendore contemplated multiple, concurrent subsequent owners would frequently use the driveway easement and whether Adams should alone continue to bear the costs of maintenance and repair despite such additional use. We find the agreement, though not patently ambiguous, has latent ambiguity as applied to the present circumstances. That ambiguity cannot be resolved without extrinsic evidence to determine the intent of the parties to the agreement. Judgment on the pleadings was therefore improper.

## CONCLUSION

We reverse the decision of the court below and remand for further proceedings consistent with this opinion.

NAJAM, J., and BAKER, J., concur.