**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**JOHN R. McKAY**
Hickam & Lorenz, P.C.
Spencer, Indiana

ATTORNEYS FOR APPELLEE:

**RONALD L. CROSS**
**ANDREW J. SICKMANN**
Boston Bever Klinge Cross & Chidester
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL WAYNE GLOCK, DAVID NIXON   )
GLOCK, AND DANIEL COLIN GLOCK,     )
                                   )
    Appellants-Defendants,         )
                                   )
        vs.                     )    No. 89A01-1109-PL-441
                                   )
SHEILA C. HALE,                    )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1003-PL-4

**May 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Michael Wayne Glock ("Michael"), David Nixon Glock ("David"), and Daniel Colin Glock ("Daniel") (collectively, "the Glocks") appeal the trial court's grant of summary judgment in favor of Sheila C. Hale ("Hale"). On appeal, the Glocks raise the following restated issues:

I.     Whether the trial court abused its discretion by denying the Glocks' motion to strike the affidavits filed in support of Hale's motion for summary judgment, which were alleged to contain inadmissible hearsay; and

II.    Whether the trial court erred in granting summary judgment in favor of Hale on the basis that she is the rightful beneficiary to the proceeds of an annuity ("the Annuity") created for the benefit of the Glocks' father, Alan Roger Glock ("Alan").

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2001, Alan settled a lawsuit with Kmart Corporation ("Kmart"). Under the terms of that settlement agreement, a portion of the settlement funds were to be paid to or for the benefit of Alan in recurring annual increments of $30,400 over a period of fifteen years. The payments were to begin on June 15, 2007 and end on June 15, 2021. Kmart transferred this annual obligation by means of a "Uniform Qualified Assignment" to The Canada Life Insurance Company of America ("Canada Life"), which in turn funded the obligation through the Annuity. *Appellants' App.* at 31-35. Great-West Life & Annuity Insurance Company ("Great-West") was the successor company following a merger with Canada Life.

Initially, Alan designated himself as the payee of the Annuity proceeds and, because the Annuity provided for survivorship benefits in the event Alan died prior to June 15, 2021,

2

Alan named his then-spouse Carolyn S. Glock ("Carolyn") as the primary beneficiary. During his marriage to Carolyn, Alan was involved in a long-term romantic relationship with Hale. Alan and Carolyn divorced in March 2007. On or about June 20, 2007, Alan executed a "Beneficiary Designation" form to remove Carolyn and appoint "Sheila Hale Glock" as the primary beneficiary of the Annuity payments upon his death. *Id.* at 36. On the Beneficiary Designation, Alan listed Hale's "Relationship to Life Insured" as "wife." *Id.* Alan and Hale, however, were not married to each other. Also on the Beneficiary Designation, Alan named three of his sons, Michael, David, and Daniel, as equal contingent beneficiaries who would receive the payments in equal one-third shares in the event the primary beneficiary did not survive Alan. Alan died on December 17, 2008. At the time of his death, both Alan and Hale were unmarried, but the two were living together.

After Alan's death, a dispute arose between Hale as primary beneficiary and the Glocks as contingent beneficiaries, concerning who was the rightful beneficiary of the Annuity proceeds. This dispute manifested itself when Hale and the Glocks served Great-West with competing and mutually exclusive demands to the Annuity proceeds. In the face of these competing demands for the Annuity proceeds, Great-West "instituted a Federal Statutory Interpleader action" in the United States District Court for the Southern District of Indiana. *Appellants' Br.* at 3. "By stipulation, all parties to the federal lawsuit reached a settlement, which provided, *inter alia*, that the Federal action be dismissed [without prejudice], and that the then current and prospective annual annuity payments would be deposited with the Clerk of the Trial Court pending resolution of the dispute between the

3

parties." *Id.*

Hale then filed a complaint in the Wayne Superior Court for declaratory judgment against the Glocks and the personal representative of Alan's Estate. The Glocks filed an answer to Hale's complaint and a counterclaim for declaratory judgment. On January 31, 2011, Hale filed a motion for summary judgment[1] and a request for judicial determination and entry of final judgment as to the claims of Michael, David and Daniel. Hale's designated evidence in support of her motion for summary judgment included ten affidavits. On March 2, 2011, the Glocks filed a motion to strike Hale's ten affidavits on the basis that each contained testimonial speculation and inadmissible hearsay. Additionally, the Glocks filed their own motion for summary judgment, including five affidavits in support of their motion.

The trial court held a hearing on the Glocks' motion to strike Hale's ten affidavits and on the counterclaim for summary judgment. Following the hearing, the trial court issued two orders. The first order denied the Glocks' motion to strike Hale's affidavits, while the second order granted Hale's motion for summary judgment, finding that Hale was entitled to the proceeds from the Annuity, and denied the Glocks' motion for summary judgment; it expressly directed entry of judgment for purposes of immediate appeal. The Glocks now appeal.

---

[1] Hale's motion was not, in fact, one for summary judgment; instead, Hale filed a motion for *partial* summary judgment, naming only the Glocks and not the personal representative. Prior to the trial court's hearing on the motion for summary judgment, however, the successor personal representative of the Estate disclaimed any interest in the Annuity proceeds and was dismissed from the case. *Id.* at 8. This left the Glocks as the only remaining defendants. As such, when the trial court granted summary judgment in favor of Hale it disposed of all matters before the trial court.

## DISCUSSION AND DECISION

### I.    Admission of Affidavits

Before addressing the primary issue of whether summary judgment was properly granted in favor of Hale, we turn our attention to the Glocks' claim that the trial court abused its discretion in denying the Glocks' motion to strike Hale's ten affidavits because the Glocks claim that those affidavits contained inadmissible hearsay. "A trial court has broad discretion in refusing to grant a motion to strike." *In re Estate of Meyer*, 747 N.E.2d 1159, 1164 (Ind. Ct. App. 2001), *trans. denied*. To overturn the denial of a motion to strike, a trial court must have committed an abuse of discretion. *McCutchan v. Blanck,* 846 N.E.2d 256, 260 (Ind. Ct. App. 2006). We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances before the trial court. *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 195 (Ind. Ct. App. 2007).

Neither party cites to the language in the affidavits that is claimed to be hearsay; however, the affidavits offered by both the Glocks and Hale focus on the question of whether Alan ever intended to marry Hale. The affiants who provided affidavits in support of Hale's motion for summary judgment averred, in part, that each had been told by Alan that he and Hale were committed to each other and were going to be married at some point in time. *Appellee's App.* at 27, 30, 33, 36, 42, 45, 48, 51. While not addressed in the Glocks' affidavits, Hale's affiants also averred that Alan said he planned to provide for Hale financially, specifically, that he would provide Hale with an annuity that would pay her about $30,000 per year after Alan's death. *Appellee's App.* at 26, 29, 33, 36. In contrast, the

affiants who provided affidavits in support of the Glocks' motion for summary judgment averred that each had been told by Alan that he would remain with Hale as long as they made each other happy, but if they did not make each other happy, they would go their separate ways. *Id*. at 53, 55, 57, 59. Some of the Glocks' affiants also averred that Alan said that he would not marry Hale. *Id*. at 53, 55, 57, 59.

The Glocks contend that the averments contained in Hale's affidavits are inadmissible hearsay because they relate statements made by Alan in order to prove the truth of Alan's statements. *Appellants' Br.* at 10. The Indiana Rules of Evidence define "hearsay" as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible except as provided by law or by [the Indiana Rules of Evidence]." Evid. R. 802. Inadmissible hearsay contained in an affidavit may not be considered in ruling on a summary judgment motion. *Breining v. Harkness*, 872 N.E.2d 155, 158 (Ind. Ct. App. 2007), *trans. denied* (2008). As a general rule, out-of-court statements offered in court for the truth of the matter therein are hearsay; "however, where the statements are not offered for the purpose of proving the facts asserted, they are not hearsay." *Ballard's Estate v. Ballard*, 434 N.E.2d 136, 139 (Ind. Ct. App. 1982). "Not all testimony about extrajudicial utterances of a third person made outside the presence of the parties qualifies as hearsay evidence. Whether it is hearsay depends on the purpose for which it is offered." *Id*.

During the hearing on the Glocks' motion to strike Hale's affidavits, Hale's counsel made the following argument:

Now as noted in our Memorandum[,] insurance contracts are like other contracts, they are to be construed in accordance with laws that are applicable to contracts in general. And generally when considering an ambiguity and a designated beneficiary, uh, form such as this one the insurance company assuming that the designated beneficiaries are not material to the risk insured, is a neutral party and really doesn't care. So we look to the intent of the insured or the person who is exercising that right to change the beneficiary.

And in this regard we look at the affidavits that have been filed in this case. Now the Glocks and their counsel have filed their Motion to Strike Certain of the Affidavits, and we contend that, that motion, those Motions to Strike are not well founded. I would have to begin this with a confession, and I didn't do it inadvertently [sic] but it appears that I have created somewhat of a red herring issue in this case, that really wasn't intended . . . . *[W]e acknowledge that whether in fact Alan Glock ever intended to marry [Hale] is totally immaterial and legally irrelevant to the issue that this Court finds itself faced with.* That seemed to be a focal point of some of the assertions in the affidavits that we provided and certainly . . . the counter affidavits that were submitted on behalf of the Glocks refute that. We contend that, that probably isn't relevant except in one, one context that we'll refer to later in our argument.

*Now the Glocks and their counsel have throughout the history of this case suggested a couple of theories that they believe support their position, and it's for that reason that some of the affidavits were prepared to address one of those theories. The first of . . . such theory is the so-called fictitious person theory as it related to that designation of Sheila Hale Glock.* I'm not really clear in my own mind . . . what that theory actually presupposes, it almost is like a conclusory name if you will or handle that will be given to the case where there's been a failure to carry a burden of proof to leak[2] [sic] an ambiguous beneficiary designation with a particular person. There is no one that meets . . . that sufficient definition to satisfy the trier of fact that such was the intent of the insured so therefore they just call it a fictitious person.

In this case I don't think we'll have that problem, Your Honor. The affidavits . . . were intended merely to show their personal observations of the closeness of the relationship between Alan and [Hale] over the years of their acquaintance. Emotions such as love, caring, affection, are emotions that derive from human experience. The affidavits in this regard are certainly not

---

[2] In the context of the language, it is likely that the word "leak" should have been the word "link."

7

speculative. They're based upon observations and they are admittedly conclusory. However, the conclusions that they draw are conclusions that we, as human beings can draw from the life experience. We recognize what affection is. We recognize love and romantic attraction and the like. *And those affidavits, as I indicated, were merely intended to draw, and to demonstrate the now seemingly admitted fact that Alan and [Hale] had a long standing, close, romantic relationship for the purpose of showing that the person designated Sheila Hale Glock on the beneficiary designation form was clearly intended to be the Sheila Hale that is before you today in this Court, as Plaintiff.*

Now, secondly, the Glocks intended the affidavits, to the extent they refer to alleged statements made by Doctor Glock who is now deceased, are hearsay, and that is simply not the case. [W]e need to go back to square one to our definition of hearsay from evidence in law school, that being an out of Court declaration made by one who's not present, and indeed Doctor Glock is not present before the Court, for the purposes of proving the truth contained in the statement. And that is where we focus. *The statements of Alan . . . that are referred to in the [Hale] affidavits . . . were to the effect that in general Alan wanted to provide for [Hale] in a financial sense should something happen to him. And in particular . . . that the annuity contract was the manner in which he had intended to do so. Now, the fact that those discussions took place ha[s] probative value. Because in and of itself it leaks[3] [sic] the annuity to [Hale] and refutes the fictitious person argument that might otherwise be promulgated by the beneficiaries. In deed [sic], whether in fact Doctor Glock had provided for [Hale], the truth of the matter if you will, we don't know, that will be dependent upon the outcome of this case.* He may very well thought he had, but if the Court does not find in their favor he will not have. But, the truth is immaterial. The fact that is significant is that these statements were made at a relevant point in time to where he confessed to these other individuals a leakage [sic] by the fact that the statements themselves were made between the annuity and [Hale], Plaintiff in this case.

*Tr*. at 5-8 (emphasis added).

The Glocks contend that statements in the Hale affidavits constituted hearsay that was

inadmissible because it was not covered by the exceptions set forth in Indiana Rules of

---

[3] Again, it is likely that this word should have been "link," and the word "leakage," at the end of this paragraph, should have been "linkage."

Evidence 803(3) (pertaining to the then existing mental, emotional, or physical condition) or 804(b)(4) (pertaining to a statement of personal or family history). *Appellants' Br.* at 10. We disagree and conclude it is not hearsay at all. Here, the trial court was tasked with interpreting the terms of the Annuity's Beneficiary Designation regarding who Alan had intended to name as primary beneficiary by his use of the term "Sheila Hale Glock, wife." *Appellants' App.* at 36. The out-of-court statements to which the Glocks objected were those made by Alan to Hale's affiants regarding Alan's intentions to both marry and financially provide for Hale. While these statements were generally relevant to the question of whether Hale was the person Alan designated as "Sheila Hale Glock, wife," the truth of whether Alan actually intended to marry or provide financially for Hale were irrelevant to the trial court's analysis. Thus, under the facts of this case, the affidavits containing these statements were not proffered for their truth; instead, they were proffered to prove that Hale was the person Alan intended when he designated "Sheila Hale Glock, wife" as the primary beneficiary of his Annuity. As such, we find these statements did not constitute hearsay, and the trial court did not abuse its discretion in denying the Glocks' motion to strike the ten Hale affidavits.

## II. Summary Judgment

The Glocks appeal from the trial court's order granting summary judgment in favor of Hale and denying the Glocks' motion for summary judgment. Specifically, they contend that Alan's designation of "Sheila Hale Glock, wife" as primary beneficiary of the Annuity failed because such was a designation to a fictitious person. Therefore, the proceeds of the Annuity rightfully belonged to the Glocks as the contingent beneficiaries.

9

When reviewing a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. "Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010). "All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party." *Id.* We will reverse if the law has been incorrectly applied to the facts. *Town of Avon v. W. Cent. Conservancy Dist.*, 957 N.E.2d 598, 602 (Ind. 2011). Otherwise, we will affirm a grant of summary judgment upon any theory supported by evidence in the record. *Wagner v. Yates,* 912 N.E.2d 805, 811 (Ind. 2009). The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Rishel v. Estate of Rishel ex rel. Gilbert*, 781 N.E.2d 735, 738 (Ind. Ct. App. 2003).

The Annuity was created as part of a structured settlement and contained the following language: "This policy is being used as a 'qualified funding asset' as defined in section 130(d) of the [Internal Revenue] Code [of 1986, as amended]." *Appellants' App.* at 27. For taxation purposes, a "qualified funding asset," in pertinent part, "means any annuity contract issued by a company licensed to do business as an insurance company under the laws of any State." 26 U.S.C. § 130. The provisions of an insurance policy are subject to the same rules of interpretation and construction as are other contract terms. *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 501-02 (Ind. Ct. App. 2003), *trans.* denied; *Rice v. Meridian Ins. Co.,* 751 N.E.2d 685, 688 (Ind. Ct. App. 2001), *trans. denied.*

As with other contracts, the interpretation of an insurance policy is a question of law. *Meridian Mut. Ins. Co. v. Purkey,* 769 N.E.2d 1179, 1182 (Ind. Ct. App. 2002). "Indiana follows 'the four corners rule' that 'extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction.'" *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006) (quoting *Hauck v. Second Nat'l Bank of Richmond,* 153 Ind. App. 245, 259, 286 N.E.2d 852, 861 (1972), *trans. denied*). A document is not ambiguous merely because parties disagree about a term's meaning. *Kelly v. Estate of Johnson,* 788 N.E.2d 933, 935 (Ind. Ct. App. 2003), *trans. denied*. Rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning. *Baker*, 843 N.E.2d at 532.

Ambiguities in a document may be of two types, patent or latent. *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004).

> A patent ambiguity is apparent on the face of the instrument and arises by reason of an inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning. Extrinsic evidence is not admissible to explain or remove a patent ambiguity. A latent ambiguity arises not upon the face of the instrument by virtue of the words used, *but emerges in attempting to apply those words in the manner directed in the instrument.* Extrinsic evidence is admissible to explain or clear up a latent ambiguity.

*Id*. (quoting *Hauck,* 153 Ind. App. at 261–62, 286 N.E.2d at 862) (emphasis in original). Hale and the Glocks disagree as to the person Alan intended by the Beneficiary Designation "Sheila Hale Glock," whose "Relationship to Life Insured [Alan]" was listed as "wife." *Appellants' App.* at 36. The Glocks contend that since Hale was not married to Alan at the time of his death, and therefore was neither Sheila Hale "Glock" nor Alan's "wife," Alan

11

named as his Designated Beneficiary a "fictitious person." *Appellants' Br.* at 5-6. Hale argues that the Beneficiary Designation contains a latent ambiguity, which requires the introduction of extrinsic evidence in order to determine who Alan intended to name as the beneficiary of the Annuity. We agree with Hale.

Here, the ambiguity arose, not upon the face of the instrument by virtue of the words used, but when the Glocks questioned Hale's right to the Annuity because she was neither named Glock nor married to Alan. *Adams*, 808 N.E.2d at 196. The trial court found, and we agree, that the Beneficiary Designation of "Sheila Hale Glock" as "wife" is a latent ambiguity. Under the facts of this case, Great-West, as the insurer of the Annuity, is a disinterested party; it will pay the Annuity proceeds to whichever party is named the rightful beneficiary. We therefore look to extrinsic evidence to attempt to discern Alan's intent. *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004). The Hale affidavits established that there was a romantic relationship between Hale and Alan. Additionally, Hale's own affidavit revealed that she and Alan met in the early 1970s, saw each other socially, and dated briefly. In the 1980s and early 1990s they drifted apart; however, their relationship was rekindled, and in 2007, when Alan executed the Beneficiary Designation, Alan and Hale were living together. There is no evidence that Alan had a relationship with anyone named "Sheila" other than the Plaintiff, Sheila Hale.

Some of the affidavits filed in support of the Glocks' motion for summary judgment provided: "At various times between July 2007 and his death, Alan Glock told me that he would not marry Sheila Hale." *Appellee's App.* at 55, 57, 59. This language not only

12

acknowledges the Glocks' understanding that Hale is the individual named as a beneficiary of the Annuity, that Alan and Hale had a relationship, but also suggests that Alan and Hale's relationship was romantic and serious enough that marriage was a consideration. The fact that Hale was designated as "wife" does not alter our analysis. As this court has stated:

> The term "wife" is merely description personae [description of the person] . . . "and the fact that the one who otherwise answers the description does not, or did not at the inception of the insurance, have the legal status of wife of the insured does not prevent her from taking as beneficiary if it is otherwise clear that she is the person intended . . . ."

*Hoess v. Cont'l Assur. Co.*, 130 Ind. App. 562, 569, 164 N.E.2d 125, 129 (1960) (quoting 29 Am. Jur. *Insurance* § 1292, the predecessor to 44A Am. Jur. 2d Insurance § 1700).

The Glocks argue in the alternative that, if Hale is, in fact, the person designated as "Sheila Hale Glock" in the Beneficiary Designation, such designation created a "condition precedent to the [b]eneficiary [d]esignation becoming effective . . . ." *Appellants' Br.* at 8. Usually, a "condition precedent must be fulfilled before the duty to perform an existing contract arises." *Scott-Reitz Ltd. v. Rein Warsaw Assocs.*, 658 N.E.2d 98, 103 (Ind. Ct. App. 1995). "Such conditions are disfavored and must be stated explicitly within the contract." *Id.* Here, the Beneficiary Designation contains no explicit statement that Hale must be married to Alan as a condition for being the beneficiary of the Annuity. Instead, Hale's name and relationship are intended as a means by which Great-West can more easily identify the person named in the Beneficiary Designation. Additionally, as the following language of the Beneficiary Designation reveals, the beneficiary was named in the present tense, without reference to future condition:

13

> The undersigned policyowner [Alan] *hereby revokes* any previous beneficiary designations and requests respecting payment of the policy proceeds and, reserving the right to revoke or change this designation, unless otherwise provided in this form, *designates* revocably the following beneficiaries to receive any policy proceeds payable on and after the death of the life in interest.

*Appellants' App.* at 36 (emphasis added).

The Glocks correctly concede that Hale could be the beneficiary of the Annuity notwithstanding the improper designation of "wife"; however, they contend that Alan's additional use of the last name Glock resulted in a Beneficiary Designation that "does not describe a real person," and therefore must fail. *Appellants' Br.* at 9; *Appellants' App.* at 41. We disagree. In 2007 when Alan signed the "Beneficiary Designation," he had recently divorced Carolyn and, because he had not remarried, did not have a wife. At that time, however, Alan had been in a long-term romantic relationship with Hale. Friends thought Alan and Hale were married, in part, because Alan referred to Hale as his wife. *Appellee's App.* at 42, 45, 48, 50-51. Like the trial court, we find no genuine issue of material fact that the person Alan intended to name in the Beneficiary Designation was anyone other than Hale, who is certainly a real and identifiable person despite the use of the additional name. We affirm the trial court's order granting Hale's motion for summary judgment and denying the Glocks' motion for summary judgment.

Affirmed.

BARNES, J., and BRADFORD, J., concur.